Adela Valado, demandante y apelada, *v.* Gregorio Mejía, demandado y apelante.

Núm. 9723.—*Sometido:* Junio 2, 1948. *Resuelto:* Julio 23, 1948.

242

*Carlos D. Vázquez*, abogado del apelante; *Wilfrido Roberts*, abogado de la apelada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Se trata de una acción de triple daño incoada por Adela Valado contra Gregorio Mejía, bajo la sección 205(e) de la Ley de Emergencia para el Control de Precios de 1942 (56 *Stat.* 23, 50 U.S.C.A. *Appendix* sección 925(e)), que disponía, antes de ser enmendada en 1944, en lo pertinente en su texto en inglés, que:

" 'If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. . . . Any suit or action under

this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid. . .' ''

Esta sección fué enmendada en junio 30 de 1944 (*Stabilization Extension Act of 1944*, 58 *Stat.* 632), para proveer en lo pertinente que:

''If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: *Provided, however,* That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'Overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price.''

De acuerdo con la prueba presentada en el juicio la corte inferior consideró probados los siguientes hechos:

''De la evidencia practicada, tanto documental como testifical, la corte estima probado que el día 4 de julio de 1942 el demandado arrendó a la demandante uno de los apartamientos de su casa situada en el número 11 (interior) de la calle Buenaventura de la Barriada Villa Palmeras de Santurce, mediante el pago de un canon semanal de $2.15; que nada se estipuló entre ambas partes en cuanto al número de personas que podrían residir en dicho apar-

tamiento ni en cuanto al pago del agua; que la demandante ocupó dicho apartamiento desde la indicada fecha en compañía de su hijo y de un hermano; y lo ocupa aún, pagando el canon estipulado de $2.15 por la habitación y por el agua que se consumía; que en diciembre de 1943 el demandante voluntariamente (*wilfully*) aumentó el alquiler de dicho apartamiento a $2.50 semanales, sin que tuviera motivos justificados para hacerlo; que la demandante tuvo que satisfacer dicho canon desde dicha fecha hasta el 10 de marzo de 1945; que el día 29 de febrero de 1944 el demandado rindió a la División de Inquilinato de la Oficina de Administración de Precios su informe de Alquileres en el que hizo constar que el canon de arrendamiento del apartamiento ocupado por la demandante era de $2.50 semanales en 1ro. de octubre de 1942; que la referida División, después de practicada la correspondiente investigación, determinó que dicho canon en 1ro. de octubre de 1942 era de $2.15 y en 1ro. de abril de 1945 dictó orden sobre el particular, a la que le dió efecto retroactivo al 1ro. de febrero de 1944; que la determinación de la División estableciendo que el día 1ro. de octubre de 1942 dicho canon de arrendamiento era de $2.15 fué aceptada finalmente por el demandado y que el demandado cobró a la demandante el canon de $2.15 semanales desde el 24 de marzo de 1945 hasta el 21 de abril del mismo año.''

Tomando en consideración los anteriores hechos la corte inferior resolvió que la demandante tenía derecho a una indemnización equivalente a $50 por cada pago de 35 centavos semanales que ella hizo al demandado por el período comprendido entre el 14 de marzo y 30 de junio de 1944, o sea catorce semanas las cuales multiplicadas por $50 hacen un total de $700, y además la cantidad de $35.70 por el total triplicado de la suma que ella pagó en exceso del alquiler máximo por el período del 1 de julio de 1944 al 14 de marzo de 1945, o sea durante 34 semanas, y en su consecuencia dictó sentencia condenando al demandado a satisfacer a la demandante $735.70, más las costas y $50 de honorarios de abogado.

No conforme el demandado apeló y en este recurso alega que la corte inferior erró: 1º al admitir una demanda enmendada que cambió la causa de acción ejercitada por la

demandante, en su carácter personal, a una causa de acción establecida por la sociedad de gananciales; 2º al condenar al demandado a pagar a la demandante la cantidad de $50 por cada pago semanal en exceso del canon máximo cuando la indemnización que podía concederse legalmente era el total triplicado de todos los sobrecargos no prescritos, pagados por la demandante, y 3º al conceder a la demandante cantidad alguna por los pagos efectuados antes del 6 de septiembre de 1944, por haber prescrito la reclamación correspondiente a dicho período.

El tercer error es consecuencia del primero y por tanto los resolveremos conjuntamente.

■■ La demanda original se radicó el 14 de marzo de 1945 por Adela Valado sin especificar que fuera soltera o casada. El juicio se celebró el 6 de septiembre de 1945 y al declarar la demandante, sin objeción del demandado, dijo que era casada con Juan Martínez Cruz pero que éste la había abandonado desde el año 1939 y desde entonces vivían separados. Al terminar la prueba de la demandante solicitó ésta permiso de la corte para enmendar la demanda para conformarla con la prueba, haciendo constar los anteriores hechos. Se opuso el demandado pero la corte permitió la enmienda haciendo referencia a un reciente caso de esta Corte Suprema, sin mencionarlo, pero que no podía ser otro que el de *Guadalupe* v. *Corte,* 65 D.P.R. 293, en el cual resolvimos, a la pág. 297, que "En la demanda original en este caso la esposa hizo una reclamación para sí. Por tanto rechazamos por superfluas las alusiones con respecto al marido. Una vez que obtenemos ese resultado, es obvio que la esposa tenía derecho a enmendar su demanda para alegar un hecho cuya ausencia hacía que la demanda fuera defectuosa: el abandono por parte de su marido hacía muchos años. Tal enmienda no cambia la naturaleza de la causa de acción ni reemplaza a la demandante por una parte demandante completamente diferente. Simplemente suministra un hecho ne-

cesario a la causa de acción, que, con excepción de este hecho, ya aduce la demanda en beneficio de la demandante. Por tanto el caso es claramente distinguible de los de *González* v. *White Star Bus Line, Inc.,* 53 D.P.R. 345, y *Morán & Cía.* v. *Corte de Distrito,* 55 D.P.R. 637.''

Al igual que en el caso de *Guadalupe* v. *Corte,* supra, en el presente, la demandante en la demanda original hizo una reclamación para sí y tenía derecho a alegar, en la demanda enmendada, el abandono por parte de su marido. De acuerdo con la Regla 17(*d*)(3) de Enjuiciamiento Civil, una mujer casada, como parte de un litigio, no necesita del concurso de su marido, cuando está viviendo separada o alejada de su marido, a causa de haber sido abandonada por éste y podrá demandar o ser demandada sola. Habiéndose presentado prueba por la demandante, sin oposición del demandado, sobre el hecho de que estaba viviendo separada de su esposo por haber sido abandonada por éste, de acuerdo con la Regla 15(*b*) sobre enmiendas para conformar las alegaciones a la evidencia, no erró la corte al permitir la enmienda a la demanda que solicitó la demandante. El efecto de dicha enmienda se retrotrae a la fecha de la demanda original, ya que tal enmienda no cambia la naturaleza de la causa de acción ni reemplaza a la demandante por una parte demandante completamente distinta. Regla 15(*c*) de Enjuiciamiento Civil; *Guadalupe* v. *Corte,* supra; *Bithorn* v. *Santana et al.,* 68 D.P.R. 300.

██ Por el segundo señalamiento se suscita una cuestión que, por haber dado lugar en los Estados Unidos a distintas interpretaciones en cuanto al alcance de la sección 205(*e*) de la Ley de Emergencia para el Control de Precios de 1942, supra, fué motivo de la enmienda hecha por el Congreso a dicha sección en la Ley de Estabilización de 1944, supra. Algunas cortes estatales y de distrito federales, interpretaron dicha sección 205(*e*) de 1942, en el sentido de que si el arrendamiento era por semana o por mes, la violación en cuanto

al precio máximo fijado, sólo concedía una causa de acción por $50, no importa el número de semanas o meses en que se cobró en exceso del precio máximo. *McCowen* v. *Dumont*, D.C. Mo., 54 Fed. Supp. 749; *Everly* v. *Zepp,* D.C. Pa., 57 Fed. Supp. 303; *Peters* v. *Felber,* Cal. Superior, 152 P.2d 42; *Ward* v. *Bochino,* 181 Misc. 355, 46 N.Y. Supp. 2d 54. Otras cortes interpretaron el estatuto en el sentido de que concedía al inquilino una causa de acción por $50 por cada pago en exceso del precio máximo fijado. *Gilbert* v. *Thierry,* D.C. Mass., 58 Fed. Supp. 235; *Lapinski* v. *Copacino,* 131 Conn. 119, 38 A.2d 592; *Kerr* v. *Congel,* 181 Misc. 461, 46 N.Y.S. 2d 932. Esta última interpretación fué la que prevaleció al ser resueltos algunos casos por las Cortes de Ape· laciones del Primero y Octavo Circuitos.

En el de *Thierry* v. *Gilbert,* 147 F.2d 603 (C.C.A. 1, 1945), la renta máxima fijada era de $50 mensuales y el arrendador, sin autorización de la O.A.P., la aumentó a $55 mensuales por haber provisto a la casa de una refrigeradora mecánica, y los cobró durante nueve meses de un arrendamiento cuyo término era de diez y siete meses. La corte resolvió:

"Estamos también convencidos, por las razones expuestas por la corte de distrito, que hay aquí nueve violaciones separadas a cada una de las cuales la penalidad estatutaria de $50 es aplicable, más bien que una sola violación como arguye el demandado. No importa que el inquilino entrara en posesión bajo un contrato de arrendamiento por diez y siete meses. . . . El demandado admite . . . que el primer pago y recibo de los $55 bajo el contrato constituyó una violación. Si esto es así, el demandante entonces tenía derecho a demandar por y obtener la penalidad estatutaria de $50 por dicha violación. ¿Hubiera esto agotado las sanciones del estatuto, dejando al arrendador en libertad de cobrar $55 por mes durante los meses sucesivos? Obviamente no. El recibo del segundo, y cada pago sucesivo de $55, serían violaciones separadas, y si hechos voluntariamente constituirían ofensas criminales. La penalidad estatutaria de $55 permanece como un incentivo al inquilino para enforzar el

reglamento tantas veces como sea violado durante los meses sucesivos.

"El resultado es sin duda riguroso en este caso en que el arrendador actuó inocentemente al efectuar los sobrecargos. Pero según originalmente enactada y aplicable aquí, la ley concedía al inquilino el derecho a recobrar la misma penalidad aun cuando la violación fuera voluntaria o no. Los rigores de la sección 205(e) han sido mitigados, pero sólo prospectivamente, por la sección 108(b) de la Ley de Extensión Estabilizadora de 1944, 50 U.S.C.A., Appendix sec. 925(e), la historia legislativa de la cual claramente demuestra que el Congreso, por tal enmienda, tuvo la intención, entre otros casos, obviar en el futuro el rigor en la exacta situación aquí presentada." (Véase el Informe del *Senate Committee on Banking and Currency*, sobre esta enmienda, copiado al margen de la pág. 605 del caso que acabamos de citar.)

En la misma forma se interpretó la sección 205(e), antes de ser enmendada, en los casos de *Lambur* v. *Yates*, 148 F.2d 137 (C.C.A. 8th., 1945), y *Kalmar* v. *McKinnon*, 152 F.2d 263 (C.C.A. 1, 1945).

No erró, por tanto, la corte inferior al conceder a la demandante $50 por cada violación semanal de la renta máxima fijada durante las catorce semanas comprendidas entre el 14 de marzo y el 30 de junio de 1944,[1] o sean $700, y tampoco, al conceder $35.70 que es el total triplicado de los treinta y cinco centavos que ella pagó en exceso del alquiler máximo por el período comprendido entre el 1º de julio de 1944 y el 14 de marzo de 1945, o sea durante 34 semanas, bajo la sección 205(e), según enmendada en el año 1944.

*Debe confirmarse la sentencia.*

El Juez Asociado Sr. De Jesús no intervino.

[1] En esta última fecha fué que se enmendó la sección 205(e).