JOSÉ MOA, por sí y en representación de su hijo menor de edad, GUILLERMO MOA ROSADO, demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Número:* R-69-156     *Resuelto:* 18 de abril de 1972

*Héctor Lugo Bougal, Delia María Auffant* y *Delia Lugo Bougal,* abogados de los recurrentes; *Gilberto Gierbolini, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino, Américo Serra* y *Lydia Nieves Franqui, Procuradores Generales Auxiliares,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Los acontecimientos y circunstancias que originaron este recurso de revisión, los narra la Sala sentenciadora, en sus determinaciones de hecho, en la forma siguiente:

"1. Guillermo Moa Rosado, allá para el mes de marzo de 1966, contaba quince años de edad, residía en Ponce, Puerto Rico y cursaba el noveno grado en la Escuela Intermedia Newmann, de Ponce, Puerto Rico. Cursaba el programa regular de noveno grado y entre sus asignaturas tomaba la de Artes Industriales, siendo su profesor el Sr. Diógenes Cedeño. La Escuela Intermedia Newmann pertenece y está bajo la supervisión del Departamento de Instrucción del Estado Libre Asociado de Puerto Rico.

2. El día 3 de marzo de 1966, alrededor de las 9:30 de la mañana, Guillermo Moa Rosado, menor demandante, se encontraba como alumno en la Clase de Artes Industriales en la mencionada escuela. El Maestro, Diógenes Cedeño, lo llamó para que

le ayudara a pasar un pedazo de madera en una máquina eléctrica conocida por 'caricanto'. La máquina de caricanto es una especie de cepillo eléctrico con tres cuchillas que giran hacia el frente a gran velocidad. El uso de esta máquina está regulado por normas de seguridad específica, debido al peligro que envuelve su operación.

3. Luego de pasar por la máquina el primer pedazo de madera, el maestro desenchufó la máquina y colocó la pieza de madera biselada sobre una mesa. Guillermo Moa permaneció al lado de la máquina esperando órdenes del maestro ya que éste no le dio instrucción alguna y el niño no sabía si había terminado o se iba a biselar alguna otra pieza de madera. Cuando el maestro colocó el pedazo de madera sobre la mesa, el menor miró hacia dicha mesa para observar como quedaba el pedazo de madera, después de biselado. De momento oyó el ruido de la máquina al ser enchufada nuevamente, y simultáneamente sintió un halón en el dedo índice izquierdo. Al mirarse la camisa vio sangre en ella. A la vez oyó la voz del maestro que le decía: 'Moa, ¿qué pasó?'. El maestro estaba doblado, con el cordón de la máquina en la mano, desenchufando nuevamente la máquina de la corriente eléctrica. Todo fue muy rápido, cuestión de segundos.

4. El profesor sacó su pañuelo, se lo dio a Moa, quien se envolvió el dedo en el pañuelo, y juntos fueron a la oficina a informarle el accidente a la principal de la escuela. De allí salieron para el Hospital Tricoche, y el menor demandante comenzó a sentir fuerte dolor en el dedo. Le pusieron una inyección para calmarle el dolor. En el Hospital Tricoche no lo pudieron curar; de ahí fueron a la casa del niño, pues éste se sentía sumamente preocupado por la forma en que recibirían la noticia su papá y su mamá. El dolor era intenso, al llegar a la casa, el padre lo llevó al Hospital de Distrito, donde al cabo de varias horas tampoco fue atendido. El dedo aún lo tenía envuelto en el pañuelo. Fue llevado por el padre a la Clínica del Dr. Pila donde fue hospitalizado y atendido por el Dr. Jaime Costas Diurex. Inmediatamente que llegó se le anestesió y fue llevado a la Sala de operaciones donde se le amputó la falange distal del dedo índice izquierdo. Estuvo dos días en el Hospital de la Clínica del Dr. Pila, pero continuó tratamiento ambulatorio hasta el día 15 de marzo de 1966.

5. El menor estudiante, además de los dolores físicos, propios del accidente y de la operación, sufrió angustias mentales y

morales. Su preocupación mayor cuando estaba en el hospital era la forma en que le quedaría el dedo. Despertando de la anestesia, le preguntó a los padres cómo le había quedado el dedo. Estos se negaron a decirle la verdad, que le habían amputado la falange distal. El menor se enteró que había perdido parte del dedo, días después de salir del hospital en ocasión en que fue a curarse a la oficina del doctor Costas Diurex y se 'sintió mal' al observar la forma en que quedó su dedo.

6. Aún en la actualidad se siente muy mal con relación al dedo índice izquierdo. Normalmente tiende a esconderlo cuando está ante grupos de muchachos y se cohibe de realizar ciertas actividades tales como bailar. Para la fecha del accidente Guillermo Moa Rosado contaba quince años de edad, era un joven saludable y practicaba actividades propias de su edad. Tras el accidente ha habido alguna limitación en su vida, tanto en su aspecto físico como mental y psicológico.

7. *El padre del menor demandante, don José Moa, ha sufrido también con motivo del accidente de su hijo. Pudo palpar el sufrimiento y los dolores físicos de éste los días siguientes al accidente, y ha notado los efectos que el mismo ha ocasionado a dicho niño. Es su hijo menor.* (Bastardillas nuestras.)

.   .   .   .   .   .   .   .

10. El profesor Diógenes Cedeño no ejerció debidamente su función de maestro a cargo de un taller de artes industriales, descuidando su deber de vigilancia y supervisión de los estudiantes. Estos deberes debía haberlos ejercido el referido maestro con el mayor grado de diligencia, tomando en consideración el tipo de clase a su cargo, las actividades a desarrollarse en la misma y la máquina inherentemente peligrosa que se utilizaba en el dicho salón de clases. La inobservancia o incumplimiento de tales deberes trajeron como consecuencia el accidente ocurrido y los daños provenientes del mismo.

.   .   .   .   .   .   .

12. Conforme con la prueba aportada durante la vista del caso y las admisiones del propio profesor, no existe nada en la prueba desfilada ante este Tribunal que le permita concluir a éste que los daños sufridos por el menor demandante tuvieron otro origen que no fuese la conducta negligente observada por el profesor Diógenes Cedeño, imputable al demandado Estado Libre Asociado de Puerto Rico.

13. Con motivo de los hechos expuestos el menor demandante, Guillermo Moa Rosado, ha sufrido dolores físicos, viéndose precisado a someterse a tratamiento médico, incluyendo intervención quirúrgica para amputarle la falange distal del dedo índice izquierdo. Además ha sufrido los consiguientes daños mentales y morales, daños que deben resarcirse por el demandado en la medida en que ello es posible."

El 16 de agosto de 1966—es decir, cinco meses y medio después del accidente—el padre del menor lesionado, José Moa, "por sí y en representación de su hijo menor de edad, Guillermo Moa Rosado", instó ante en Tribunal Superior, Sala de Ponce, contra el Estado Libre Asociado de Puerto Rico, una acción sobre daños y perjuicios, exponiendo en su demanda lo siguiente:

"EN EL TRIBUNAL SUPERIOR DE PUERTO RICO
SALA DE PONCE

| | |
|---|---|
| JOSÉ MOA, *por sí* y en representación de su hijo menor de edad, GUILLERMO MOA ROSADO | Civil Núm. CS66-2644 |
| *Demandantes* vs. | Sobre: |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO, Demandado | DAÑOS Y PERJUICIOS |

DEMANDA

HONORABLE TRIBUNAL:

Comparece *la parte demandante* representada por sus abogados que suscriben, y muy respetuosamente, expone, alega y solicita:

(1) *Que el demandante, José Moa, es mayor de edad, casado y vecino de Ponce, Puerto Rico, y comparece en esta acción por sí y en representación de su hijo* menor de edad, Guillermo Moa Rosado.

(2) Que por medio de la Ley número 104 del 29 de junio de 1956, [*sic*] el Estado Libre Asociado de Puerto Rico permite y da consentimiento a ser demandado por terceras personas cuando se causen daños y perjuicios fundados en acción u omisión

negligente de cualquier agente, agencia o empleado, actuando en capacidad oficial y dentro del marco de sus funciones.

(3) Que para el día 3 de marzo de 1966, el menor demandante Guillermo Moa Rosado era estudiante de la Escuela Neumann [*sic*] de Ponce, propiedad de y bajo la dirección y supervisión del Estado Libre Asociado de Puerto Rico. En dicha fecha y mientras asistía a su clase de carpintería, cuyo maestro lo era el señor Diómedes [*sic*] Cedeño, éste llamó al menor aquí demandante para que le ayudara a pasar un listón de madera por la máquina conocida como 'calicanto' la cual es un cepillo eléctrico utilizado para aserrar madera.

(4) Que el uso de dicha máquina está prohibido a los estudiantes debido a lo peligroso de la misma, y el maestro, descuidando su deber de vigilancia, invitó al menor demandante a que le ayudara, con el consabido peligro y riesgo, ocasionándose el menor una herida en el dedo índice de la mano izquierda, siendo necesaria la amputación de dicho dedo por la mitad.

(5) Que la causa directa del accidente lo fue la negligencia del Estado Libre Asociado de Puerto Rico, a través de su agente y empleado el maestro Diómedes Cedeño al no ejercer la debida supervisión en el trabajo a ser realizado por el menor, al invitarlo a bregar en una máquina peligrosa, la cual está prohibida para el uso de los estudiantes, y al no tomar medidas para conjurar los riesgos que ofrece a menores inexpertos el uso y manejo de instrumentos peligrosos como lo es dicha máquina.

(6) Que como consecuencia del accidente descrito, el menor co-demandante ha resultado con la incapacidad proveniente de la amputación de su dedo índice izquierdo, ha sufrido fuertes dolores físicos, además de daños y angustias mentales al verse mutilado su dedo índice, daños y perjuicios que valora en una suma no menor de $10,000.00.

POR TODO LO CUAL, muy respetuosamente, de este Honorable Tribunal se suplica que en su día, y previo los trámites de ley pertinentes, *declare con lugar la presente demanda y condene a la parte demandada a pagar a los demandantes la suma total de Diez Mil Dólares ($10,000.00)*, más las costas, gastos y una suma razonable para honorarios de abogado." (Bastardillas nuestras.)

Emplazada debidamente la parte demandada el 19 de agosto de 1966, contestó la demanda negando "todos y cada

uno de los hechos según los mismos aparecen expuestos en la demanda excepto que admite (a) Que allá para el 3 de marzo de 1966 Guillermo Moa Rosado era estudiante de la Escuela Newmann de Ponce y (b) En la fecha anteriormente mencionada Guillermo Moa Rosado sufrió un accidente perdiendo parte del dedo índice de la mano izquierda."

Como defensas afirmativas alegó que: (1) la demanda no aduce una causa de acción a favor de la parte demandante y en contra de la parte demandada; (2) el accidente fue uno casual en que no hubo negligencia del Estado Libre Asociado, sus funcionarios o empleados y (3) el accidente se debió a la culpa o negligencia del menor o en su defecto su conducta contribuyó sustancialmente al mismo.

Fue el pleito a juicio el 29 de agosto de 1967. Sus incidentes preliminares los reseña el juez sentenciador así:

"A la vista del caso de epígrafe compareció la parte demandante representada por las Lics. Delia María Auffant y Delia Lugo Bougal, y la parte demandada por los Lics. Rafael E. Castro Pérez y Gilberto Irizarry. Al comienzo de la vista, la parte demandante *solicitó permiso del Tribunal para enmendar la demanda a los efectos de clarificar la alegación número 6* para indicar que se estaba solicitando compensación por los daños y angustias mentales sufridos tanto por el padre del menor demandante como por los de éste. *En el título de la demanda, en la súplica y en la alegación primera, se hacía constar que el padre del menor,* JOSÉ MOA *comparecía por sí y en representación de su hijo menor de edad, Guillermo Moa Rosado. El Tribunal concedió el permiso para la enmienda,* y la parte demandada, aunque manifestó su oposición a la misma *indicó estar lista para la vista del caso.* Ambas partes ofrecieron evidencia testifical y documental para la consideración de este Tribunal.

Las partes se comprometieron a radicar memorandums en cuanto a *la enmienda permitida* y así lo han hecho." (Bastardillas nuestras.)

La minuta de ese día recoge más detalles de esos incidentes. Entre otras cosas, en ella se hace constar:

"La parte demandante pide que se enmiende el último párrafo, alegación número 6, *para que se incluya los daños y angustias mentales sufridos por su señor padre.* La parte demandada alega que es una nueva causa de acción y objeta la enmienda. Pide que se desestime la alegación por estar prescrita.

Discutida la referida cuestión por ambas partes y sometida, el Tribunal *amparándose en la Regla 13.1* de las Reglas de Procedimiento Civil, *declara con lugar la petición de enmienda interpuesta por la parte demandante.*

*La parte demandada está dispuesta a continuar con la vista del caso con la nueva enmienda.*

La parte demandante ofreció prueba testifical consistente en los testimonios de GUILLERMO MOA ROSADO y JOSÉ MOA LEÓN, demandantes." (Bastardillas nuestras.)

El 19 de mayo de 1969 el tribunal de instancia dictó sentencia en el caso. Declaró con lugar la reclamación respecto al menor codemandante, concediéndole una indemnización de $4,500.00 por los daños y perjuicios sufridos por él. Desestimó la demanda en cuanto al padre codemandante José Moa por el siguiente fundamento:

"No tenemos duda de que con la enmienda solicitada la parte demandante intentó introducir una nueva causa de acción la cual ya estaba prescrita."

Decidimos revisar el fallo a petición de los demandantes. El señalamiento de errores se formula así:

"*Primer Error:* Cometió error el Honorable Tribunal de instancia al desestimar la acción del padre del menor demandante, por cuanto la enmienda a la demanda original no introducía una nueva causa de acción y por tanto no estaba prescrita.

*Segundo Error:* Cometió error el Honorable Tribunal sentenciador al valorar los daños sufridos por el menor demandante en la suma de $4,500.00."

## I

La respectiva tesis, sostenida hábilmente por cada parte, frente al primer punto debatido, es como sigue:

Parte recurrente: fue manifiestamente errónea la desestimación de la reclamación de compensación que por su propio derecho hizo el padre codemandante José Moa, por el daño moral que él sufrió con motivo de las lesiones recibidas por su hijo el 3 de marzo de 1966, porque la enmienda que propuso, y el tribunal admitió en juicio, al párrafo sexto de la demanda, sólo tuvo el propósito de clarificarlo en el sentido de indicar que lo reclamado por sufrimientos y angustias mentales se refería, tanto a los sufridos por el hijo como a los sufridos por el padre codemandante sin aumentarse el valor de la reclamación total; que tal enmienda, por tanto, no introducía en el litigio una nueva causa de acción prescrita.

Parte recurrida: la desestimación fue correcta; en la demanda original no se reclamó daño moral alguno sufrido particularmente por el padre; solamente fueron reclamados aquellos daños físicos y morales sufridos por su menor hijo Guillermo; compareció en la acción exclusivamente en representación, como padre y para beneficio de su hijo; a virtud de la indicada enmienda se introducía, una nueva causa de acción a favor del padre José Moa, que resultaba prescrita.

Tiene razón la parte recurrente en este primer planteamiento. A juicio nuestro, la enmienda al párrafo sexto de la demanda, considerada en unión a las demás alegaciones de la demanda original, no traía al pleito una nueva causa de acción, sólo corrigió una deficiencia formal incurrida al formularse la reclamación. Asumiendo que la hubiera traído, era admisible la enmienda y la nueva causa de acción no estaba prescrita. Veamos.

Es cierto que en la demanda original, sólo constan alegados los daños sufridos por el menor en los siguientes términos:

"Que como consecuencia del accidente descrito, el menor *codemandante* ha resultado con la incapacidad proveniente de la amputación de su dedo índice izquierdo, ha sufrido dolores físicos, además de daños y angustias mentales al verse mutilado de su dedo índice, daños y perjuicios que valora en una suma no menor de $10,000.00" (Énfasis suplido.)

Sin embargo, el uso de la expresión *"codemandante"* denota que el menor reclamaba en el pleito en compañía de, en unión de, al propio tiempo de, otra persona o personas. Esta era su padre. Ninguna otra finalidad podrían tener, el párrafo primero de la demanda que dice:

"Que *el demandante, José Moa,* es mayor de edad, casado y vecino de Ponce, Puerto Rico, y *comparece en esta acción por sí y en representación de su hijo menor Guillermo Moa Rosado."* [1] (Énfasis suplido.)

En el título y en la súplica se indican a padre e hijo como *demandantes,* y se solicita del tribunal a quo un remedio de resarcimiento para ambos, aunque no se indica en qué proporción.

La parte demandada en el encabezamiento de sus escritos de contestación, moción de suspensión, memorial y moción interesando determinaciones adicionales de hechos, llamaba *"demandantes"*, a la parte actora en el caso, usando también el término "José Moa, et als.".

■ La demanda hace referencia, en su segundo párrafo, a la Ley Núm. 104 de 1955, sobre pleitos contra el Estado Libre Asociado de Puerto Rico, que en su Art. 2, enmendado en 30 de junio de 1965, en parte dispone:

"Cuando se radique una acción contra el Estado por daños y perjuicios a la persona o a la propiedad, el Tribunal ordenará, mediante la publicación de edictos en un periódico de circulación general, *que se notifique a todas las personas que pudieran tener interés común, que deberán comparecer ante el Tribunal,* en la fecha dispuesta en los edictos, para que sean acumuladas a los fines de proceder a distribuir la cantidad de $30,000 entre los demandantes, según se provee en esta ley." 32 L.P.R.A. sec. 3077.

Así el Estado se evita verse sometido a futuros litigios por la misma causa de acción. Por esta razón, esa disposición

---

[1] Bajo esta comparecencia dual se ejercitaron dos causas de acción independientes; una, personal, beneficio propiedad del padre y la otra representativa, en beneficio del hijo menor. Véase *Gigante* v. *Alvarez,* 48 D.P.R. 498, 502 (1935).

de dicho estatuto debe ser cumplida religiosamente por el tribunal correspondiente.

De modo que es la propia Ley la que hace obligatoria la comparecencia, en acciones de esta naturaleza, "a todas las personas que pudieran tener interés común" en el caso, sin hacer distinción alguna entre ellas sobre los fundamentos de su causa de pedir. Esta ley, pues, legitima la acción personal que ejercitó obviamente José Moa, por sí, es decir *iure proprio*, independiente de la relación parental que lo liga a su hijo.

Es muy familiar la norma de que todo aquel que recibe o sufre realmente un daño moral, tiene derecho al resarcimiento adecuado contra el responsable, que tiene su sede en el Art. 1802 de nuestro Código Civil. Es claro que, en esta materia, nos movemos siempre dentro de la hipótesis de lesión. En ausencia de ésta, no hay daño que resarcir o remediar. Nuestra jurisprudencia en torno a tal precepto, siempre ha exigido que, en estos casos, en la demanda se alegue el daño sufrido por la culpa o negligencia del responsable. En este aspecto, hasta cierto punto, fallaba la reclamación, por su propio derecho, de José Moa. Ello pudo deberse a que no hizo constar separadamente, en su demanda original, cada reclamación, para facilitar una formulación más clara y completa de los asuntos expuestos, como lo previene la Regla 8.2 de Procedimiento.

Sin embargo, en su redacción cumplió con todas las demás normas generales para las alegaciones fijadas por las Reglas 6, 7, 8 y 9. Observó uno de los dos requisitos que tales Reglas señalan para una solicitud de remedio, es decir, expuso la solicitud del remedio a que creía tener derecho, así:

"Por todo lo cual, muy respetuosamente, de este Honorable Tribunal se suplica que en su día, y previos los trámites de ley pertinentes, declare con lugar la presente demanda y condene a la parte demandada a pagar *a los demandantes la suma total* de

Diez Mil Dólares (10,000.00), más las costas . . . ." (Énfasis suplido.)

Esta solicitud de remedio para ambos no subsanó el defecto producido por la carencia de "una relación sucinta y sencilla de la reclamación" demostrativa de que el peticionario —José Moa, individualmente—tiene derecho a un remedio, como exige la Regla 6.1.

Se estaba, pues, ante una deficiente exposición de una causa de acción, predicable bajo unos hechos jurídicos reconocidos en las propias conclusiones de hecho formuladas posteriormente por el tribunal de instancia.

Empero, esta deficiencia desapareció en la siguiente forma:

"Al comienzo de la vista, la parte demandante solicitó permiso del Tribunal para enmendar la demanda a los efectos de clarificar la alegación número 6 para indicar que se estaba solicitando compensación por los daños y angustias mentales sufridos tanto por el padre del menor demandante como por los de éste. . . . El Tribunal concedió el permiso para la enmienda, y la parte demandada, aunque manifestó su oposición a la misma indicó estar lista para la vista del caso. Ambas partes ofrecieron evidencia testifical y documental para la determinación de este Tribunal."—Opinión y Sentencia, Autos Originales, pág. 85.

—Así se suplió la deficiencia de la demanda, por primera vez, con efecto retroactivo a la fecha de la demanda, bajo la Regla 13.3.

En sus determinaciones de hechos probados el Tribunal a quo relata la angustiosa intervención del padre José Moa en el asunto, desde que su hijo llegó herido a su hogar sufriendo intensos dolores, y entre ellas, hace la siguiente respecto a José Moa:

"7—El padre del menor demandante, don José Moa, ha sufrido también con motivo del accidente de su hijo. Pudo palpar el sufrimiento y los dolores físicos de éste los días siguientes al accidente, y ha notado los efectos que el mismo ha ocasionado a dicho niño. Es su hijo menor."

Con la prueba presentada por los demandantes y esta determinación del tribunal de instancia, quedaba de nuevo curado el indicado defecto de la demanda original, a la luz de lo dispuesto en la Regla 13.2.

La enmienda no introdujo una causa de acción nueva como sostiene la parte recurrida. Simplemente aclaró un concepto que estaba implícitamente expuesto en la demanda original, o que se podia racionalmente inferirse de sus alegaciones, esto es, que el padre también reclamaba por daños morales con motivo del accidente que le ocurrió a su hijo. Lo que se aclaró, por la enmienda, fue que en el resarcimiento deberían participar el hijo y su padre, en pago de sus respectivos daños sufridos, en las respectivas cantidades que fijara el tribunal a quo.

■ Todas las alegaciones—previene la Regla 6.6—se interpretarán conjuntamente y con el propósito de hacer justicia; la función de ellas es simplemente bosquejar la controversia y para que cada parte notifique a la otra de la naturaleza general de sus contenciones en contrario; el procedimiento, puro elemento formal, no debe utilizarse para derrotar derechos sustantivos de una parte; la demanda, en particular, se interpretará de tal forma que únicamente se desestimará si el demandante no tiene derecho a ningún remedio bajo cualesquiera hechos que él pueda probar en juicio a base de lo que ha alegado en la demanda, como tantas veces hemos dicho. (²)

■ Con mayor razón deben aplicarse esos principios al caso de autos en que un padre, en precario estado de salud, (³)

---

(²) Véase, *Manual de Derecho Procesal Civil*, por Rafael Hernández Colón, pág. 161, Equity, 1969.

(³) En autos se encuentra una certificación médica del Dr. Francisco C. Porrata, del 22 de mayo de 1967, que se acompañó a una moción de suspensión del juicio, en que consta lo siguiente:

"May 22, 1967

"TO WHOM IT MAY CONCERN: .

"This is to certify that Mr. José Moa León is hospitalized at Clínica

reclama el resarcimiento por los daños que sufrió al contemplar a su hijo mutilado permanentemente en parte de su mano izquierda, torturado por intensos dolores y angustias mentales. Sufrir moralmente el padre por el infortunio del hijo, es, en términos generales, un hábito ordinario de la vida, un proceso psíquico inevitable en todo ser humano normal. Ello es de reconocimiento común y general, notorio e indisputable, que en el nivel de las pruebas, es o debe ser de conocimiento judicial, aun cuando no se ofrezca evidencia alguna al efecto. (4)

■ Empero, como el dolor y sufrimiento no pueden ser objeto de cotización, para determinar el valor razonable de tales daños morales es preciso que el reclamante, en cada caso, aporte los factores de evidencia necesarios para evaluarlos justa y adecuadamente, probando que no se trata de una simple pena pasajera, sino que, en alguna medida apreciable, el reclamante realmente quedó afectado en su salud, bienestar y felicidad, como dijimos en *Ramos Rivera* v. *E.L.A.*, 90 D.P.R. 828, 831 (1964).

En *Cintrón* v. *Insular, etc., y Balbaño*, 58 D.P.R. 821, 829 (1941), bregamos con una situación similar. Entre otras cosas allí resolvimos:

"La regla general en estos casos está expuesta en 17 R.C.L. 821, en esta forma:
    'La regla general es que una enmienda a una demanda que no establece una nueva causa de acción sino meramente amplía y da mayor precisión a las alegaciones en apoyo de la

Dr. Pila, Ponce, P.R. since 5/16/67. He will have to remain in the hospital about two more weeks.
    "Diagnosis:
    Heart failure due to auricular fibrillation with a rapid ventricular rate due to arteriosclerotic heart disease.
                                                    Francisco C. Porrata, M.D."
    (4) Véanse *Lluberas* v. *Mercado e Hijos*, 75 D.P.R. 7 (1953) y los casos de California, citados en Code of Civil Procedure, Sección 1875—igual al Art. 36 de nuestra Ley de Evidencia—de West's Annotated California Codes, Tomo 20, pág. 638, sobre el conocimiento judicial respecto a los sufrimientos físicos y emocionales.

causa originalmente establecida, o expresa nuevos fundamentos o especificaciones afines a tales imputaciones o alegaciones, se retrotrae al comienzo de la acción y puede ser sostenida sin consideración al estatuto de prescripción.'

Al mismo efecto véase 37 C.J. 1068, Sección 507 y siguientes. En el caso de *Mohn* v. *Tingley*, 217 P. 733 (191 Cal. 470), se resolvió que:

'Si una demanda original no expone una causa de acción y una nueva o diferente no se levanta por la demanda enmendada,. pero se le agregan materias nuevas sólo para completar la causa de acción original, la enmienda, aunque hecha después de expirado el término de prescripción, se retrotrae a la fecha de la radicación de la demanda original.'

La demanda enmendada en el caso de autos no estableció una nueva causa de acción sino que amplió las alegaciones hechas en la original. Como se dijo en el caso de *Ft. Wayne Iron & Steel Co.* v. *Parsell*, 94 N.E. 770, 776: 'hay una diferencia entre una causa de acción defectuosa y una defectuosa alegación de una causa de acción' y la enmienda de esta última se retrotrae al comienzo de la acción."

La enmienda se refería a daños morales padecidos por el padre en virtud, y como efectos y consecuencias naturales, del mismo evento, conducta y transacción expuesto en la demanda original que también generó los daños sufridos por su hijo. Tan es así que, después de propuesta y admitida la enmienda, no obstante la oposición de la parte demandada, el párrafo sexto enmendado quedó redactado así:

"(6) Que *como consecuencia del accidente* descrito, el menor codemandante ha resultado con la incapacidad proveniente de la amputación de su dedo índice izquierdo, ha sufrido fuertes dolores físicos, además de daños y angustias mentales al verse mutilado su dedo índice, *y daños y angustias sufridos por su padre aquí codemandante,* daños y perjuicios que valoran en una suma no menor de $10,000.00" (Énfasis suplido.) Véase pág. 5 del Memorándum de Autoridades, unido a la petición del recurso.

En *Ortiz* v. *Gobierno Municipal de Ponce*, 94 D.P.R. 472, 479 (1967), considerando el alcance de la citada Regla 13.3, nos expresamos así:

"[6] Por otro lado, considerada la Regla 13.3, surge igualmente que la reclamación expuesta en la demanda original es idéntica a la que informa la demanda enmendada. En *Cintrón v. Insular, etc., y Balbaño,* 58 D.P.R. 821 (1941), ya habíamos expresado que ejercitada una acción dentro del término de ley si la demanda se enmienda expirado ese término y la enmendada no establece una nueva causa de acción sino que amplía las alegaciones de la original, la enmienda se retrotrae a la fecha de la radicación de la original. Más razón existe ahora para mantener igual solución en que el concepto determinante de suficiencia no es tanto el de la existencia de una causa de acción como el de si de la alegaciones surge la susceptibilidad de conceder un remedio. Pero hay más. Bajo la anterior Regla 15(c) de 1943, sostuvimos en *Bithorn v. Santana,* 68 D.P.R. 300 (1948), que las alegaciones de la demanda enmendada se retrotraen a la de la original, aun cuando aquélla aduzca una causa de acción distinta, siempre que surjan de la misma conducta o transacción. Véanse además, *Valado v. Mejías,* 69 D.P.R. 241 (1948); *Roses v. Juliá* 67 D.P.R. 518 (1947); *Sánchez v. Cooperativa Azucarera,* 66 D.P.R. 346 (1946). En significativo una vez más el lenguaje de la Regla 13.3 que se refiere a 'reclamación' y no causa de acción.(4) En el presente caso la reclamación que se ejercita es idéntica."

El accidente, repetimos, ocurrió el 3 de marzo de 1966. Se inició la reclamación judicialmente, el 16 de agosto siguiente. El juicio fue señalado, por primera vez, para el 7 de febrero de 1967. A solicitud de la parte demandada fue suspendido. Lo mismo ocurrió cuando se señaló por segunda vez. Si se hubiera visto el 7 de febrero de 1967, la solicitud de enmienda hubiera podido proponerse antes de transcurrir el año posterior al accidente. Pero, de todos modos, la enmienda, en sus efectos, se retrotrae a aquel 16 de agosto de 1966, es decir, a sólo cinco meses y medio después del accidente.

---

"(4) Advertimos de paso que nuestra Regla 13.4 sobre alegaciones suplementarias difiere de la Regla 15(d) federal en que las permite 'aunque la reclamación original sea inadecuada'. Cf. *Fajardo v. Tribunal de Contribuciones,* 68 D.P.R. 746 (1948), resuelto bajo la anterior Regla 15(d) de 1943."

Se trata de una enmienda, que, seguramente, por su verdadera naturaleza aclaratoria, no impidió a la parte demandada indicarle al tribunal que, si bien se oponía a ella, estaba *"lista para la vista del caso,"* según se expresa en la Opinión y Sentencia. Tampoco le impidió presentar evidencia testifical y documental. Se opuso, sin éxito alguno, a que José Moa declarara sobre sus angustias y sufrimientos mentales.

El tribunal permitió que Moa declarara, y su testimonio sirvió de base para la determinación de hecho Núm. 7, que dejamos transcrita. No pidió la eliminación de tal determinación en su moción interesando determinaciones adicionales de hecho del 29 de mayo de 1969. ([5])

■ Concediendo que por la enmienda se traía al pleito una nueva causa de acción, cosa posible bajo la jurisprudencia nuestra y continental reseñada, la misma no estaba prescrita, ya que la reclamación fue interpuesta a los cinco meses y medio del accidente y la misma estaba pendiente al momento de la enmienda.

■ Como tenemos resuelto en *Feliciano* v. *A.A.A.*, 93 D.P.R. 655, 659 y 661 (1966), la mera interposición efectiva de una demanda ante un tribunal, dentro del término prescriptivo (como lo fue la demanda original presentada por José Moa, por sí, y, además en representación de su hijo menor Guillermo), que es un acto expreso y judicialmente constatado, produce el efecto interruptor de la prescripción extintiva de la acción ejercitada, cualesquiera que sean las vicisitudes posteriores a la radicación de la demanda, como, por ejemplo, carecer el tribunal, al cual se ha acudido, de competencia para entender en la acción o que se declare sin lugar la reclamación mediante moción de *non suit.*

([5]) Hemos examinado el "memorial" presentado por el demandado ante el tribunal de instancia, insistiendo en su oposición a la enmienda, aun después de admitida por dicho Tribunal; por el mismo fundamento de que introducía una nueva causa de acción, que se hallaba prescrita.

■ La interrupción, por gestión judicial, dura hasta que termina definitivamente la acción ejercitada. Cf. *Vda. de Carlo* v. *Toro*, 99 D.P.R. 200, 225 (1970.)

Por todo lo expuesto estimamos que el tribunal sentenciador incurrió en el primer error señalado. *Consecuentemente revocaremos la sentencia dictada en cuanto la misma decreta la desestimación de la causa de acción particular ejercitada por el padre codemandante José Moa respecto a los daños morales que sufrió por el accidente y, a su vez se declarará con lugar dicha causa de acción, condenando a la parte demandada a pagarle la suma de Tres Mil Dólares ($3,000) como justo y razonable resarcimiento de dichos daños.*

## II

Versa el segundo error apuntado sobre la valoración de los daños sufridos por el menor codemandante. Solicita la parte recurrente que se aumente la cuantía de la compensación de $4,500 concedida a dicho menor. La parte recurrida sostiene que la misma es justa y razonable y nada existe que justifique su alteración.

■ Considerando todas las circunstancias, elementos y factores envueltos particularmente en este recurso, estimamos que la compensación de Cuatro Mil Quinientos Dólares ($4,500) concedida al menor Guillermo Moa Rosado no es justa y razonable, por lo que el tribunal recurrido también incurrió en el segundo error señalado. Los autos ante nos son suficientes para considerarlo así. La perdurabilidad del daño sufrido por dicho menor, su edad, el influjo indeseable que la condición de su mano izquierda pueda haber tenido en su adolescencia, (6) que tenga o vaya a tener en su juventud y madurez, dentro del círculo familiar, en sus relaciones de amistad, en su labor, y en toda actividad humana en que se vea envuelto, nos ha convencido de que la suma de Diez Mil Dólares ($10,000) es la adecuada como resarcimiento del

---

(6) Hoy debe contar 22 años de edad.

daño que recibió. *En cuanto a él se modificará la sentencia recurrida.*

Se dictará sentencia conforme a la anterior opinión.

El Juez Presidente, Señor Negrón Fernández, no intervino.