Salas Soler, Juez Ponente
*660 TEXTO COMPLETO DE LA SENTENCIA
Se recurre en apelación presentada el 27 de abril de 1998 ante este circuito de una sentencia dictada el 19 y notificada el 26 de marzo de 1998 del Tribunal de Primera Instancia, Sala Superior de Carolina. La sentencia declaró Con Lugar la demanda por daños y perjuicios a favor del demandante-apelante, Sr. Máximo Ramírez Medina ("Ramírez") que radicara contra El Comandante Operating Company ("El Comandante"), concediéndole al apelante Ramírez la suma de $5,000.00 por concepto de daños y perjuicios, más las costas y gastos incurridos por el demandante-apelante en la tramitación del pleito. La parte apelada sometió su articulado Alegato el 13 de julio de 1998 y conforme a lo solicitado, el hermano foro de Instancia nos remitió el expediente del caso el 14 de julio de 1998.
El señor Ramírez recurre ante nosotros por estar inconforme con la indemnización concedida señalando la comisión de dos (2) errores:

“1. Erró el Tribunal de Primera Instancia al no darle credibilidad al testimonio pericial ofrecido por el demandante sobre su incapacidad por el solo hecho de que dicho testimonio "se refiere a unas tablas internacionales de incapacidad, en lugar de las Guías de Incapacidad de la Asociación Médica Americana, que son las que admiten y utilizan los tribunales para esas determinaciones".

2. Erró el Tribunal de Primera Instancia al sólo adjudicar cinco mil dólares ($5,000.00) como compensación por los daños sufridos a causa del accidente."
Coincidimos con el señor Ramírez y procedemos a modificar la cuantía concedida, aunque no al extremo por él solicitado.
Hechos
El 12 de diciembre de 1993, el señor Ramírez de 39 años de edad para la fecha del incidente, se encontraba observando las carreras de caballos en la primera fila del segundo piso del "Grand Stand" del Hipódromo El Comandante, frente a la meta. El área en que se encontraba el señor Ramírez, era un área separada del público en general, a la cual se le da acceso a sus parroquianos por medio del pago de cincuenta centavos (500) adicionales a la entrada general. Este segundo piso tiene góndolas de asientos y termina en una valla que, según descritas al detalle por Instancia en su sentencia, tiene una altura de tres pies, dos pulgadas (3' 2") desde el piso hasta el tubo superior. El tubo corre paralelo a la valla donde está instalada.
En ese día se corría el evento denominado "Clásico del Caribe" y el área donde estaba el señor Ramírez se encontraba tan abarrotada de personas que inclusive se forzó a varias de ellas a sentarse hasta en las escaleras. Mientras los ejemplares que participaron en la carrera se aproximaban a la meta en el mencionado clásico, el señor Ramírez se puso de pie frente a su asiento, debido a que el público a su izquierda se había puesto de pie en la euforia del momento y le impedía la visión de la pista desde la última curva de la misma. En la excitación del momento, el señor Ramírez sintió "un empujón por detrás" que ocasionó que perdiera el balance, que se fuera por encima de la baranda y que se desplomara desde el segundo piso hasta el área del primer piso. De suerte dentro de las circunstancias, cayó de pie.
El señor Ramírez fue examinado por el Dr. Víctor Rodríguez, médico del Hipódromo, quien lo refirió al Hospital de Area de Carolina. En el hospital le tomaron radiografías, las cuales revelaron que *661 como consecuencia de la caída sufrió trauma en el área del tobillo derecho, fracturándose el maléolo medial y el Lh de la fíbula de la pierna derecha. Estuvo con el tobillo y la parte inferior de la pierna derecha enyesada por un período de tiempo de aproximadamente dos meses y medio. Sufrió intensos dolores e incomodidad extensa. Usó muletas en toda gestión que requiriera movimiento. Instancia determinó que:

“Como consecuencia del accidente, el demandante tiene limitaciones permanentes que le impiden realizar trabajos pesados como levantar, empujar o halar objetos pesados y no se puede eñangotar, debido a inflamación crónica en el área del tobillo, con dolor al movimiento. Actualmente el demandante ha perdido capacidad de movimiento, lo cual le afecta tanto en su vida personal como productiva".

Exposición y Análisis
Ambos señalamientos de error inciden sobre lo mismo: que el apelante entiende que la indemnización fue muy baja. La norma vigente es que los tribunales de instancia están siempre en mejor posición que los tribunales apelativos para evaluar y conceder daños, toda vez que han tenido contacto directo con la prueba. De ahí que los tribunales apelativos no deben intervenir con las compensaciones concedidas a menos que estas sean ridiculamente bajas o exageradamente altas. Cotto v. Ríos, 96 J.T.S. 56; Rosado v. Supermercado Mr. Special, 96 J.T.S. 6; Quiñones v. Manzano, 96 J.T.S. 95.
El señor Ramírez solicita $50,000.00 en daños. Estudiado el caso, estimamos la mencionada cantidad excesiva. También encontramos la cantidad otorgada de $5,000.00 muy baja. El perito médico del demandante-apelante Dr. Ismael Ruiz le asignó un 60% de incapacidad de las funciones fisiológicas del tobillo, pero no en cuanto a las generales. El perito del demandado-apelado, Dr. Juan Llompart M.D., F.A.C.S., informe del 31 de julio de 1995, le asignó al señor Ramírez un impedimento físico de un 10% de las funciones del tobillo, que se refleja en un impedimento físico de un 4% de funciones fisiológicas generales. Se toma conocimiento judicial que en la Corporación del Fondo del Seguro del Estado se ha otorgado en numerosos casos $2,000.00 por cada por ciento (%) general, sin embargo, nuestro análisis arroja el resultado de que no hay norma específica a este respecto. Hemos examinado meticulosamente los precedentes citados por ambas partes y concluimos que la suma de $18,000.00 es la más adecuada justa dentro de las circunstancias del presente caso.
Una de las tareas más difíciles para un tribunal es adjudicación de compensaciones por daños y perjuicios. La tarea de evaluar y adjudicar daños es una complejas angustiosa, ya que no existe un sistema mecánico que le permita al juzgador llegar a un resultado exacto. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); Urrutia v. A.A.A., 103 D.P.R. 643 (1975). El juzgador debe estar consciente además, de que el dolor humano no es similar ni pecuniariamente cotizable. Aunque el dinero no puede ser paragonado con el dolor, puede no obstante proporcionar a la víctima cierta compensación que, a pesar de no restaurar lo perdido, puede procurarle unos placeres y satisfacciones mentales que pueden ayudar a atenuar la pena. Riley v. Rodríguez Pacheco, 119 D.P.R. 762 (1987). El resarcimiento económico consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. El dinero se subrogará en el lugar de la pérdida. García v. Shiley Caribbean, 122 D.P.R. 193 (1988).
Para la determinación del valor razonable de daños morales y angustias, se exige que el reclamante aporte la evidencia necesaria para establecer que no se trata de una pena pasajera sino que, en alguna medida apreciable, el reclamante quedó afectado en su salud, bienestar y felicidad. De hecho el señor Ramírez trotaba con frecuencia, cosa que ya, de por vida, no podrá realizar. Moa v. E.L.A., 100 D.P.R. 573 (1972). Al momento de adjudicar daños deben tomarse en cuenta factores tales como el gasto de curación, el valor del tiempo perdido, la rebaja permanente en la capacidad de ganar dinero, el valor del sufrimiento, la edad de la víctima y su estado de salud antes y después del evento. Cofresí v. Sociedad Española Auxilio Mutuo, 100 D.P.R. 30 (1971); Padró v. Quiñones, 78 D.P.R. 322 (1955). Esto, debido a que la intención justa y humana de la ley al proveer indemnización por daños es conceder a la persona afectada una compensación suficiente y efectiva. Rojas v. Maldonado, 68 D.P.R. 818 (1948).
*662 Como se expresara anteriormente, la responsabilidad de adjudicar compensaciones por daños es muy compleja y angustiosa. Rodríguez Cancel v. A.E.E., supra; Urrutia v. A.A.A., supra. Ante esta realidad, el Tribunal Supremo ha reconocido que los Tribunales de Primera Instancia están siempre en mejor posición que los Tribunales Apelativos para evaluar y conceder daños, toda vez que han tenido contacto directo con la pmeba. De ahí, que los Tribunales Apelativos no deban intervenir con las compensaciones concedidas a menos que éstas sean ridiculamente bajas o exageradamente altas. Quiñones v. Manzano, 96 J.T.S. 95; Cotto v. Ríos, 96 J.T.S. 56; Rosado v. Supermercado Mr. Special, supra. La parte que solicita la modificación de los daños viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978).
Ambos peritos médicos aceptan, y así lo reconoció la ilustrada Sala de Instancia, que el señor Ramírez padece de una condición limitante y permanente. El apelante a su relativamente corta edad, se ha visto y se verá afectado por unas dolencias que minarán considerablemente sus capacidades físicas y motoras. No cabe duda que éste ha quedado afectado en su salud, bienestar y felicidad. Moa v. E.L.A., supra.
Como sabemos, no hay dos casos exactamente iguales; cada caso se distingue por sus propias y variadas circunstancias. Por eso hemos analizado todos los procedentes ofrecidost tanto por el señor Ramírez como por El Comandante, y encontramos que Morales Muñoz v. Castro, 85 D.P.R. 288 (1962), tiene un parecido con la presente causa en términos de los daños que sufriera el Sr. Miguel Morales Muñoz y la compensación que de $5,000.00 le aumentara el Tribunal Supremo a $10,700.00, ello hace 36 años atrás. Por lo tanto, entendemos que una compensación de $18;000.00 se ajusta mejor a la realidad de los hechos presentados.
Dictamen
Se modifica la sentencia apelada a los fines de aumentar la cuantía otorgada en daños de $5,000.00 a $18,000.00. Se confirma la sentencia en todos sus otros extremos.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General