ARTURO GIGANTE, por sí y como padre con patria potestad sobre su menor hija GEORGINA GIGANTE, demandante y apelado, *v.* JOSÉ ÁLVAREZ, demandado y apelante.

No. 6715.—*Sometido:* Mayo 3, 1935. *Resuelto:* Mayo 20, 1935.

*C. Iriarte* y *F. Fernández Cuyar*, abogados del apelante; *La Costa & La Costa, Jr.,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

El día 14 de marzo de 1933, al pasar la niña Georgina Gigante, de seis y medio años de edad, por la calle Pacific Place No. 28, en Santurce, Puerto Rico, frente a la casa del demandado apelante, un perro policía, conocido por el nombre de Nerón, y que en dicha fecha estaba bajo la posesión y custodia del demandado apelante, le infirió una mordedura en la región glútea izquierda, lanzándola al pavimento.

La demanda en este caso, que aparece iniciada por Arturo Gigante por sí y como padre con patria potestad sobre su menor hija Georgina Gigante, contiene dos causas de acción. Comienza la primera alegando que el demandante Arturo Gigante es padre legítimo de la menor Georgina Gigante, con patria potestad sobre la misma, y luego, en los hechos tercero, cuarto y quinto de la demanda, se expone la causa de acción en la siguiente forma:

"3. El día 14 de marzo de 1933, mientras la hija del demandante Georgina Gigante pasaba por la calle frente a la residencia del demandado·Pacific Place No. 28 en el poblado de Santurce del Municipio de San Juan, Puerto Rico, el mencionado perro del demandado que estaba suelto y sin bozal se abalanzó sobre la persona de la mencionada niña Georgina Gigante, lanzándola al pavimento e infiriéndole algunas mordeduras y arañazos de carácter grave en diversas partes de su cuerpo.

"4. Con motivo del referido accidente la referida Georgina Gigante ha sufrido y sufre en la actualidad intensas crisis nerviosas, desvelos, insomnios, ha perdido su salud y se encuentra en un estado de constante intranquilidad, ha venido sufriendo de fuertes dolores en todo el cuerpo y ha sufrido angustias mentales y morales, e intensos dolores físicos y tuvo que recibir asistencia médica.

"5. Como consecuencia de las alegaciones que preceden la hija del demandante ha sufrido daños y perjuicios en la suma de QUINIENTOS CINCUENTA DÓLARES ($550), que se distribuyen así:

"Por las crisis nerviosas, desvelos, insomnios, pérdida de salud,

dolores físicos y angustias mentales y morales, $500.00; medicinas y asistencia médica, $50.00, $550.00.''

En la segunda causa de acción se alega que el demandante, como consecuencia de los sufrimientos y dolores experimentados por su hija, perdió su tranquilidad por muchos días, habiendo sufrido moral y mentalmente y pasado un gran susto, por todo lo cual reclama la suma de $500.

El demandado formuló excepción por falta de hechos contra esta segunda causa de acción, alegando que un padre no puede recobrar daños mentales o morales debido a lesiones personales sufridas por un hijo menor de edad. La corte desestimó esta segunda causa de acción por las razones aducidas y declaró con lugar la primera, condenando al demandado apelante a pagar al demandante Arturo Gigante, por sí y como padre con patria potestad de su menor hija Georgina Gigante, la cantidad de $350, por los daños y perjuicios ocasionados a dicha menor con motivo de la mordedura del perro poseído por el demandado, con imposición de costas y honorarios de abogado.

Tres son los errores señalados por el apelante: el primero se relaciona con el pronunciamiento sobre costas, el segundo versa sobre la cuantía de la indemnización concedida que, a juicio del demandado, no ha debido exceder de $50, y el tercero se basa en la apreciación de la prueba que se considere manifiestamente errónea.

██ Discutiremos en primer lugar el segundo señalamiento de error, que es el único que por su importancia exige detenida consideración. Arguye el apelante que de acuerdo con las alegaciones de la demanda, es Arturo Gigante quien aparece demandando y no su hija Georgina. Se llama la atención al texto de la demanda, que habla repetidamente del demandante, y a la súplica de la misma donde se pide sentencia condenando al demandado a pagar al demandante la suma reclamada. Se dice además que para mayor constancia Arturo Gigante jura que es el demandante en la acción.

Como hemos visto, las alegaciones de la demanda tienden a establecer dos causas de acción separadamente alegadas. Una de ellas, la segunda, fué desestimada por falta de hechos, sin que se haya establecido recurso de apelación sobre este pronunciamiento de la corte inferior. Queda en pie la primera causa de acción, y la única cuestión a resolver es si esta acción se ejercita para beneficio de la menor o exclusivamente para beneficio de su padre el Sr. Arturo Gigante.

En el presente caso Arturo Gigante comparece por sí y como padre con patria potestad sobre su menor hija Georgina Gigante. En la segunda causa de acción, que fué desestimada por la corte inferior, el Sr. Gigante alega se le han inferido daños con motivo del accidente de su hija; en la primera, los daños, según las alegaciones, fueron inferidos a la menor. Estamos de acuerdo en que la parte realmente interesada debe aparecer como demandante en la acción, pero ¿puede decirse que en este caso no surge de la demanda que la primera causa de acción se ejercita a beneficio de la menor, representada por su padre?

Hemos leído detenidamente las alegaciones que sirven de base a la causa de acción ejercitada. En ella se hace una relación de los dolores físicos y sufrimientos morales de la niña Georgina Gigante y se dice que la misma ha sufrido daños y perjuicios que se estiman en $550. No se alega en esta causa de acción que el demandante Arturo Gigante haya sufrido daños. Por el contrario, se hace constar que fué la niña Georgina quien los sufrió. Es claro y evidente que Arturo Gigante no puede reclamar para sí una indemnización que, según las alegaciones, corresponde a su hija. No cabe suponer que el padre promueva una acción para que se le indemnice de un daño que no ha sufrido y al cual no tiene derecho. Las alegaciones de la demanda indican que esta primera causa de acción, a que ha quedado reducida la demanda, se inició en beneficio de la niña y no del padre. La misma corte parece haberlo entendido así cuando condena al deman-

dado a satisfacer al demandante Arturo Gigante la cantidad de $350 *por los daños y perjuicios ocasionados a dicha menor con motivo de la mordedura del perro poseído por el demandado.* Si el pronunciamiento del tribunal *a quo* concede únicamente indemnización por los daños y perjuicios ocasionados a la menor, es claro que la suma concedida le pertenece en propiedad y que tiene derecho a hacerla efectiva por conducto de su legítimo representante. La corte inferior incurrió en un error que debe ser corregido al condenar al demandado a satisfacer la suma concedida a Arturo Gigante por sí y como padre con patria potestad de su menor hija Georgina. El padre de la menor, demandante en su capacidad representativa, no puede reclamar para sí participación alguna por daños que de acuerdo con los hechos alegados fueron inferidos a su hija.

Que Arturo Gigante no tuvo la intención de establecer este pleito exclusivamente para su propio beneficio lo demuestra la capacidad dual con que comparece, por sí y como padre con patria potestad sobre la menor, y las dos causas de acción en que aparece dividida la demanda, alegándose en una, como consecuencia de esta comparecencia dual, daños inferidos al padre por sus angustias y sufrimientos, y en la otra daños inferidos a la hija con motivo del accidente. Como ya hemos dicho, de la demanda se deduce que en esta primera causa de acción Arturo Gigante actúa en su capacidad representativa. No vemos que exista gran diferencia entre la comparecencia del padre representando al hijo y la del hijo representado por el padre. Lo esencial es que de las alegaciones de la demanda y la naturaleza de la acción ejercitada surja claramente que es el pupilo la parte realmente interesada y que el tutor o el padre, según sea el caso, demande en su capacidad representativa.

En el caso de *Bennett* v. *Bennett*, 91 N. W. 409, resuelto por la Corte Suprema de Nebraska, el tutor inició una demanda donde simplemente se limitaba a decir en el título: "Levi Bennett, Guardian of Emery W. Tuttle", sin hacer

constar expresamente que demandaba como tutor. Se impugnó la demanda por el fundamento de haber sido promovida personalmente por el tutor y no por el pupilo. Resolviendo la cuestión planteada, la corte se expresó así:

"Una considerable porción del argumento en favor del apelante se dirige a la suficiencia de la petición. En el título, el demandante se describe a sí mismo como Levi Bennett, tutor de Emery W. Tuttle, y no dice en ninguna parte de la solicitud expresamente que esté demandando como guardián. Por esta razón, y porque las palabras 'Guardian of Emery W. Tuttle' podrían estrictamente ser tratadas como *descriptio personae* solamente, se insiste en que esta demanda ha sido promovida por Levi Bennett en su capacidad personal y no representativa y en que no puede así sostenerse. Pero en vista de que el demandante se describe a sí mismo como tutor y alega su nombramiento como tal, y de que por sus alegaciones y la naturaleza de la acción demuestra claramente su intención de demandar en su capacidad representativa, nosotros podemos honradamente interpretar así sus alegaciones, a pesar de no haber hecho constar expresamente que demandaba como tutor. Williams v. Eikenbary, **36** Neb. 478, 54 N. W. 852."

En el caso de *Metropolitan Life Insurance Co.* v. *Fitzgerald,* 209 S. W. 77, 79, la Corte Suprema de Arkansas se expresa así:

"La pauta seguida por nuestras decisiones demuestra que la ley que requiere que las acciones se ejerciten en el nombre **de la parte** realmente interesada, ha recibido una interpretación muy liberal con el propósito de hacer efectivo el sabio precepto que permite demandar a aquellas personas que son realmente partes interesadas en **la** acción (Citas)."

El principio de que la acción debe ejercitarse a nombre de la parte realmente interesada tiene por objeto evitar que el demandado pueda verse sometido a futuros litigios por la misma causa de acción. En un caso como el presente el demandado resulta garantido. La capacidad con que comparece Arturo Gigante, los hechos alegados en la demanda y las conclusiones establecidas por este tribunal constituyen una completa protección para la parte demandada.

■ Se arguye que en esta causa de acción se piden $50 por medicinas y asistencia médica que deben ser reclamados por el padre y no por la hija. La verdad es que ésta es una indemnización que puede reclamar el padre, pero hay decisiones que sostienen que si el padre incluye en la reclamación partidas que le corresponderían directamente, el menor queda autorizado para obtener su pago, sin que el padre pueda más tarde ejercitar una acción para reclamarlas.

En el caso de *Flessher* v. *Carstens Packing Co.*, 165 Pac. 397, el demandante inició una acción reclamando indemnización por daños que le fueron ocasionados con motivo de un accidente de que fué víctima su hija. Se alegó que las partidas reclamadas en la demanda habían sido incluídas en una acción establecida anteriormente por el propio demandante como tutor *ad litem* de su referida hija. La Corte Suprema de Washington, resolviendo la cuestión planteada, se expresó así:

"Según interpretamos las alegaciones, las partidas relativas a servicios médicos y gastos de hospital no fueron incluídas en las alegaciones de la demanda presentada ante la Corte Federal, ni en forma alguna fueron ventiladas en dicho recurso. Entonces surge la cuestión de si el apelante tiene derecho a obtener el importe de dichas partidas en este recurso. La ley es al efecto de que cuando un menor sufre lesiones, surgen dos causas de acción, una en favor del menor por sufrimientos físicos y por las lesiones permanentes, y la otra en favor del padre por la pérdida de servicios durante la minoridad y por los gastos incurridos durante la enfermedad. Estas acciones pueden ser acumuladas o juzgadas separadamente. En el caso de Harris v. Puget Sound Electric Railway, 52 Wash. 299, 100 Pac. 841, en que estaba envuelta esta cuestión, se dijo:

" 'Cuando un menor sufre lesiones, surgen dos causas de acción, una en favor del menor por los sufrimientos físicos y lesiones permanentes, y la otra en favor de los padres por la pérdida de servicios durante la minoridad y por los gastos incurridos durante la enfermedad . . . Estas dos causas de acción pueden ser acumuladas ó instituídas separadamente . . . '

"Cuando un menor de edad sufre lesiones como resultado de la negligencia de otra persona, y el padre instituye una acción como

tutor *ad litem,* y en dicho recurso se trata de obtener indemnización de conformidad con los términos de la demanda, o cuando en el mismo se ventilan cualesquiera partidas de indemnización correspondientes al padre, éste no puede entablar una acción posterior sobre las mismas partidas, toda vez que al incluirlas en el recurso en que él actúa como tutor *ad litem,* el menor fué autorizado para recobrar tales partidas de daños y perjuicios, y el padre está impedido de obtener posteriormente indemnización por las mismas. (Citas). En el caso de Donald v. Ballard, 34 Wash. 576, 76 Pac. 80, refiriéndose al caso de Daly v. Everett Pulp & Paper Co., 31 Wash. 252, 71 Pac. 1014, se dijo:

" 'Esta corte resolvió que cuando se inicia un pleito en reclamación de daños y perjuicios provenientes de las lesiones producidas a un menor, y cuando la acción se instituye en beneficio del menor con el consentimiento del padre, para recobrar los daños y perjuicios que de otro modo el último podría recobrar, éste no puede más tarde presentar demanda a nombre propio reclamando las mismas partidas que fueron incluídas en el pleito anterior. Se resolvió que bajo las circunstancias el padre ha emancipado al hijo en lo que al derecho a percibir indemnización por los daños y perjuicios incluídos en el pleito del hijo se refiere. Así es el presente caso. Es evidente que el padre consintió a que el hijo obtuviera indemnización, toda vez que él mismo inició el recurso en su propio nombre como tutor *ad litem* e incluyó específicamente la partida de daños y perjuicios objeto de esta controversia. Según el caso citado el menor estaba autorizado para recobrar esta partida y el padre por segunda vez no puede, en su propio beneficio, obtener indemnización por el mismo daño.'

"Aplicando la ley a los hechos de este caso, se desprende que el apelante, conforme demuestran las alegaciones, tenía una causa de acción contra la demandada, por servicios médicos, pérdida de servicios durante la minoridad y gastos de hospital; que el apelante, como tutor *ad litem* de su hija menor de edad, libró su contienda ante la corte federal, y en dicha acción incluyó la partida relativa a pérdida de servicios; que no incluyó las partidas relativas a servicios médicos y gastos de hospital. Toda vez que estas partidas no fueron ventiladas en forma alguna ante la corte federal, no puede decirse que el apelante trató de obtener allí la indemnización correspondiente a tales partidas y que por ende está impedido de proseguir este litigio."

En el presente caso Arturo Gigante incluye entre los daños

ocasionados a su hija los gastos de medicinas y asistencia médica que aparecen alegados en la primera causa de acción. Creemos, como la Corte Suprema de Washington, que el Sr. Gigante no puede reclamar en el futuro esta suma, que además de haber sido alegada ha sido objeto de prueba. Nos parece acertada la conclusión, en vista de las alegaciones y la prueba, de que estos daños han sido renunciados por el padre en beneficio de la hija.

En cuanto al pronunciamiento sobre costas, alega el apelante que la demanda contenía dos causas de acción, dos reclamaciones distintas, por la suma de $1,050, y que la corte inferior desestimó en su totalidad una de esas causas de acción. Hemos examinado las alegaciones y la prueba y todas las circunstancias que intervienen en este caso, y no estamos convencidos de que el demandado haya sido temerario hasta el extremo de merecer que se le condene a pagar honorarios de abogado. Respetamos el criterio de la corte inferior en cuanto a las costas, pero creemos que deben excluirse de las mismas los honorarios de abogado.

En cuanto a la prueba, no podemos decir que el tribunal *a quo* haya incurrido en manifiesto error al apreciarla. Se ha demostrado que la niña fué mordida por un perro llamado Nerón, que vivía en la casa del apelante. La misma prueba del demandado así lo demuestra. Tulio J. Mas, sobrino de la esposa de José Álvarez y quien alega ser dueño del perro, declara que reside en casa del Sr. Álvarez, donde ha tenido siempre al perro suelto en la casa, que el perro vive allí, que está siempre *realengo*, y que es él quien se cuida de darle los alimentos al referido animal. José Nogueras, testigo del demandado, declara que es *chauffeur* de José Álvarez, que el perro estaba acostado en la acera de la casa del demandado el día que ocurrió el accidente, que cuando entró a trabajar en la casa del Sr. Álvarez el perro estaba allí, y que durante todo el tiempo que ha estado en la referida casa ese perro ha estado suelto. El demandado José Álvarez de-

clara que ese perro vino a su casa hace como tres años, que siempre lo ha visto suelto por allí y que Tulio Mas es quien se encarga de cuidar y mantener al perro y de sacarlo y bañarlo en el mar.

La ley aplicable al caso es el artículo 1805 del Código Civil de Puerto Rico, edición 1930, que dice textualmente así:

"El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape, o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

Este artículo de nuestro código es igual al 1905 del código español de donde fué copiado. La corte inferior en su resolución cita un comentario a este artículo del Sr. Martínez Ruiz, en su obra "Interpretación al Código Civil", ed. 1908, que dice así:

"El que posee o se sirve de un animal para su utilidad o recreo, viene obligado a ejercer sobre él la vigilancia y cuidado necesarios para evitar que cause daño a tercero. Pero no es ésta la consideración que sirve de fundamento al Código para imponer al poseedor del animal la obligación de indemnizar el daño que ocasione, y a la que se refiere el artículo 1905. Por el solo hecho de la posesión presume la ley el consentimiento tácito del poseedor de responder de todas sus consecuencias, ya que no se le oculta a éste la ineficacia relativa del cuidado y vigilancia de seres irracionales. Y en virtud de esta presunción le hace responsable de cuantos perjuicios y daños cause el animal, *aunque se le escape o extravíe;* es decir, aun encontrándose en condiciones que le impidan hacer la vigilancia a que está obligado, cuya falta no es, por consiguiente, la causa de la obligación que contrae de indemnizar el daño. Como se ve por la simple lectura de este artículo, el código ha prescindido de la distinción, que admitían las partidas, entre animales fieros y mansos, siendo, por tanto, igualmente aplicables a unos que a otros la prescripción que este artículo contiene." Tomo II, pág. 149.

Con respecto a la posesión del animal de que habla el Código Civil, la corte inferior se expresa así:

"Lo que dice nuestra ley es que el poseedor del animal o el que se sirve de él para su utilidad o recreo, responderá de los daños que

causare. Hemos encontrado una extensa monografía sobre esta cuestión en Holmes v. Murray, 17 L.R.A. (N. S.) 431, en donde se cita el caso de Schultz v. Griffith, 72 N. W. 745. El consenso general de la jurisprudencia es que una persona que permite que un sirviente o empleado suyo tenga un perro en su residencia, es poseedor o custodio del mismo (*harbour or keeper*). Doctrina ésta que es exactamente igual a la que sustenta nuestro derecho histórico. Véase a mayor abundamiento 1 R.C.L. 1120, pár. 63, y 3 C. J. 106, pár. 345. La prueba del demandante demuestra de modo preponderante que el daño fué causado por un perro que estaba bajo la posesión del demandado, y tomando en consideración la ley y la jurisprudencia aplicables, la naturaleza de las lesiones sufridas y toda la prueba aportada al caso, resolvemos que el demandado debe responder al demandante del daño causado en una cantidad que fijamos justa y razonablemente en $350.00, y por cuya cantidad se declara con lugar la primera causa de acción de la demanda entablada.''

En el caso de *Redinger* v. *Crespo*, 18 D.P.R. 108, se copian varios párrafos del comentarista Manresa, quien sustancialmente sostiene el mismo criterio que el Sr. Martínez Ruiz, se dice que las autoridades americanas se expresan virtualmente en igual sentido y se transcribe, entre otros, un párrafo de Cyc. que dice así:

''Atender, quiere decir proteger, y el que acaricia a un perro como si lo tuviere en su casa, y se toma el trabajo de hacer que le obedezca dirigiendo sus movimientos es el dueño o encargado, según el significado de la ley; pero el hecho de que se encuentre fortuitamente un animal en su finca, si no se le trata como se ha dicho, no convierte a tal persona en dueño, o persona encargado del mismo. Si el jefe de una casa de familia, que está en posesión y dominio de una casa o finca, deja o permite que se cuide un animal en su finca de tal modo, puede considerársele como encargado de dicho animal, ya pertenezca el mismo a su hijo o a su esposa; y si una mujer casada tiene todos los derechos de una soltera, *feme sole*, en lo que se refiere a sus bienes propios, puede ser responsable como encargada de un animal, aunque en realidad pertenezca a su marido, no siendo esto necesariamente así. Igualmente una corporación o sus oficiales, un huésped, o un barco, pueden estar sujetos a responsabilidad. La persona que a sabiendas permite que se cuide un perro en su finca, por un empleado o sirviente, es un encargado según el alcance del estatuto;

pero no sucede lo mismo, cuando el empleado vive en otra casa en la finca del patrono. El hecho de que otras personas excepto el demandado habían intervenido en el cuido de un animal no lo exime de ser considerado como la persona a cuyo cuidado está el animal dentro del significado del estatuto." (2 Cyc., 378, 379, y casos citados).

Esta doctrina aparece ratificada por este tribunal en el caso de *Torres* v. *Dávila*, 47 D.P.R. 315, donde el Juez Asociado Sr. Wolf, hablando a nombre del tribunal, dijo lo siguiente:

"Cuando en acción de daños y perjuicios instada por una persona que fué mordida por un perro bravío hay prueba, creída por la corte inferior, tendenté a demostrar la propiedad del animal en el demandado y prueba, además, de que aun cuando el perro no le perteneciera estaba constantemente en su casa y lo albergaba en la misma, y por tanto lo tenía bajo su inmediata posesión, dicho demandado es responsable de los perjuicios causados por el animal a tenor del artículo 1805 (ed. 1930) del Código Civil."

Con respecto a los daños, la prueba demuestra que la niña recibió una herida punzante, y que fué visitada unas seis veces por el Dr. Pujadas, quien le puso una inyección antitetánica. La curación, según este facultativo, fué rápida. La niña declara que la mordida le produjo un dolor muy fuerte, que por la noche soñaba con el perro y se despertaba gritando, llamando a su mamá.

La corte inferior estimó los daños en $350. El demandado no impugna esta suma por considerarla excesiva, sino porque a su juicio es Arturo Gigante quien ejercita la acción, y éste no tiene derecho, según la prueba, a una cantidad mayor de $50 por la asistencia médica. Debe desestimarse el error apuntado.

En cuanto a la culpa atribuída a la niña Georgina, nos atenemos a las conclusiones de la corte inferior, aunque discrepemos un tanto de su razonamiento.

*Debe confirmarse la sentencia apelada, modificándola en el sentido de condenar al demandado José Álvarez a satisfa-*

cer a la niña Georgina Gigante, representada por su padre Arturo Gigante, la cantidad de $350 con las costas, excluyendo honorarios de abogado.