ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EDGARD N. GUTARRA<br><br>Recurrido<br><br>v.<br><br>JUNTA DE DIRECTORES CONDOMINIO VALLES DE TORRIMAR<br><br>Recurrente | KLRA202300588 | *REVISIÓN JUDICIAL* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: C-SAN-2019-0005605<br><br>Sobre: Condominio (Ley Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Juez Aldebol Mora y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de febrero de 2024.

Comparece la parte recurrente, la Junta de Directores del Condominio Valles de Torrimar, (Junta o recurrente) mediante un recurso de *Revisión Judicial*. Solicita que dejemos sin efecto la *Resolución en reconsideración* dictada el 16 de octubre de 2023, notificada al día siguiente, por el Departamento de Asuntos del Consumidor (DACo). En la aludida determinación administrativa, el DACo ordenó a la Junta a tomar las medidas necesarias para el cumplimiento del ordenamiento legal. En particular, instruyó a que las áreas comunes de los condóminos no se utilicen para alimentar animales y así evitar que éstos permanezcan en dichas zonas. Por igual, mandató el pago de $500 en concepto de honorarios por temeridad, a favor de la parte recurrida, el señor Edgard N. Gutarra Negrón (señor Gutarra Negrón o recurrido).

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución en reconsideración* impugnada.

---

[1] El Hon. José I. Campos Pérez sustituyó al Hon. Nery E. Adames Soto, por virtud de la Orden Administrativa TA-2023-212, emitida el 6 de diciembre de 2023.

Número Identificador

SEN2024 _____

**I.**

El 30 de septiembre de 2019, el DACo notificó a la Junta la querella del título presentada por el señor Gutarra Negrón.[2] En lo que nos concierne, el recurrido alegó que había solicitado infructuosamente a la Junta que adoptara medidas correctivas para la eliminación de animales realengos en las áreas comunes, así como la expedición de comunicados de cortesía o multas administrativas a las personas que dejaran desperdicios en las aceras, el área de estacionamiento, zafacones y otras zonas del Condominio, en alusión a la comida de gatos y los envases con agua. Como remedio, solicitó que se prohibiera la alimentación de gatos realengos y el recogido de los felinos, acorde con la entonces vigente Ley de Municipios Autónomos. Véase, Art. 2.004 de la LMA, 21 LPRA sec. 4054 (g) (derogado).[3]

La Junta peticionó la desestimación de la querella.[4] Alegó que el DACo carecía de jurisdicción para atender la controversia, por ésta versar sobre un conflicto entre titulares. En esencia, planteó que los gatos no domesticados formaban parte del ecosistema del Condominio, pero no eran propiedad de ninguno de los condóminos. Acotó que el Reglamento del Condominio Valles de Torrimar alude a "perros o cualesquiera otros animales domésticos" por lo que, al no tratarse de estos animales, la Junta no tenía la capacidad ni la jurisdicción para remover los gatos no

---

[2] Apéndice de la parte recurrente, págs. 210-215. Otras reclamaciones se tornaron académicas o fueron desestimadas.

[3] El estatuto actual es la Ley Núm. 107 de 13 de agosto de 2020, Código Municipal de Puerto Rico, 21 LPRA sec. 7001 *et seq.* Como parte de las facultades generales de los municipios, el Artículo 1.010 del Código Municipal, inciso (h), establece la siguiente:

> Adoptar e implementar las medidas de precaución que sean convenientes o necesarias para proteger la salud pública, en lo que pueda ser afectada por **animales domésticos realengos**. Establecer, operar y administrar los refugios de animales, de acuerdo a la Ley Núm. 36 de 30 de mayo de 1984, según enmendada. Asimismo, deberá procurar que se cumpla con las disposiciones de la Ley 154-2008, según enmendada, conocida como "Ley para el Bienestar y la Protección de los Animales". (Énfasis nuestro). 31 LPRA sec. 7015 (h).

[4] Apéndice de la parte recurrente, págs. 216-233, con anejos a las págs. 234-318.

domésticos. Apuntaló, sin embargo, que la Administración emitía multas a los infractores de cualquier conducta proscrita.

La Junta indicó, además, que la alimentación de los felinos era producto de una iniciativa de un grupo de titulares, denominado "Movimiento Concordia, paz para los animales" (Movimiento Concordia), sin que mediara ninguna intervención del recurrente. Según el comunicado de la organización anejado a la petición desestimatoria,[5] el proyecto integrado por titulares voluntarios se inició en 2015. Éste utiliza el método TNR (siglas en inglés de *trap*, capturar; *neuter*, esterilizar; y *return*, devolver a la colonia) para proteger a los felinos, controlar su reproducción, así como para evitar la propagación de roedores y sabandijas. El Movimiento Concordia también vacuna a los gatos comunitarios e identifica hogares para su adopción. La Junta adujo también que el Movimiento Concordia había designado unas áreas específicas para dar de comer a los gatos y que luego removían los envases para su reutilización. No obstante, expresó:

> [L]a Junta ha impartido directrices expresas al personal de mantenimiento y seguridad para que [é]stos remuevan cualquier envase cuando [é]stos se percaten de que están colocados en las aceras y otras áreas comunes en las cuales los titulares participantes del Movimiento Concordia les coloquen comida a los gatos que habita[n] en las inmediaciones del Condominio y que por su naturaleza se las ingenian para entrar a las facilidades.[6]

El señor Gutarra Negrón replicó.[7] Rechazó la distinción entre animales domésticos y no domésticos planteado por la Junta para preterir ejercer su autoridad sobre el asunto, el cual impedía el pleno disfrute de su propiedad. El recurrido imputó a la Junta haber incurrido en temeridad, precisamente por negarse a admitir su responsabilidad en la omisión de administrar el Condominio de manera diligente. Aseveró que, desde 2018, comunicó verbalmente

---

[5] Apéndice de la parte recurrente, pág. 255.
[6] Apéndice de la parte recurrente, pág. 220.
[7] Apéndice de la parte recurrida, págs. 40-52, con anejos a las págs. 53-97.

a la Administración sus inquietudes en torno a la situación de los gatos realengos. Expuso que, en 2019, el presidente de la Junta, el señor Pedro J. López Norat, le indicó que tenía que identificar a las personas alimentantes de los gatos para, entonces, iniciar el procedimiento administrativo del Condominio. En atención a ello, recopiló información y la remitió a la Junta. No obstante, ante la falta de una solución satisfactoria, acudió al foro administrativo para que atendiera de manera efectiva el problema de gatos realengos. Así, sostuvo la jurisdicción del DACo sobre la causa.

El 8 de diciembre de 2021,[8] se celebró una vista por videoconferencia con la comparecencia de las partes. Éstas peticionaron al foro administrativo que las controversias pendientes se dirimieran mediante la presentación de memorandos de derecho.[9] Tanto la Junta[10] como el recurrido[11] presentaron sus respectivos escritos el 4 de febrero de 2022.

El 21 de septiembre de 2023, el DACo notificó una *Resolución.*[12] En ésta, consignó las siguientes determinaciones fácticas relacionadas con las controversias que nos competen:

> 1. La parte querellante, Edgar[d] N. Gutarra, es titular del apartamento J-212 del Condominio Valles de Torrimar, localizado en Guaynabo, Puerto Rico; según surge de la escritura número 36, otorgada el 21 febrero de 2017 ante el notario público Luis Alberto Sifonte Colón.
>
> 2. En el Condominio Valles de Torrimar, existe un problema de proliferación de gatos realengos que afectan las áreas comunes del inmueble.
>
> 3. El Movimiento Concordia, paz para los animales es una agrupación creada y compuesta voluntariamente por titulares y residentes del Condominio Valles de Torrimar que, entre otras cosas, proveen comida a los gatos realengos en los predios comunes del Condominio.

---

[8] Apéndice de la parte recurrente, págs. 335-336.
[9] Apéndice de la parte recurrente, págs. 338-339.
[10] Apéndice de la parte recurrente, págs. 343-360, con anejos a las págs. 361-430.
[11] Apéndice de la parte recurrente, págs. 431-440, con anejos a las págs. 441-468.
[12] Apéndice de la parte recurrente, págs. 6-16.

4. Esto, sumado a los animales que no están esterilizados, provoca que la población de gatos aumente y con ello, los problemas de convivencia en la comunidad, debido al mal olor de los excrementos y las diferentes plagas que atrae la comida que se les administra a estos animales.

5. Al menos desde el 14 de marzo de 2019, titulares del Condominio Valles de Torrimar, incluido el querellante, le han reclamado a la Junta que tome acción sobre este problema. Sin embargo, la parte querellada no atiende el mismo alegando que se trata de un problema entre vecinos y que es el Tribunal de Primera Instancia quien debe resolver esa controversia. Incluso, no imponen multas a los titulares que alimentan a los gatos en área comunes bajo la premisa de que estos titulares no son dueños de los animales que alimentan.

6. La Junta reconoce, a través de sus acciones hacia los titulares del Movimiento Concordia, que el asunto de los animales realengos que son alimentados por [é]stos crea un problema de limpieza en las áreas comunes, así como con los vehículos estacionados en el área provista para ello. Esto pues, la Junta ha tenido que coordinar el recogido diario de las heces de estos animales, así como añadir a las funciones de los guardias de seguridad que se efectúen rondas preventivas para velar que los gatos no se posen sobre los autos.

.    .    .    .    .    .    .    .

Al tenor de los enunciados citados, y en lo que atañe al recurso del epígrafe, el DACo ordenó a la Junta a que *inmediatamente tome las medidas necesarias para erradicar el problema de gatos realengos existente en el Condominio Valles de Torrimar.* De ser necesario, instruyó al recurrente a tomar las acciones legales pertinentes contra los titulares infractores. Del mismo modo, concedió a la parte recurrida $500 de honorarios de abogado por concepto de temeridad.

Insatisfecha, la Junta interpuso una *Solicitud de Reconsideración.*[13] Alegó que la orden sobre la *erradicación de los gatos* era contraria al ordenamiento legal y a la política pública gubernamental.[14] Apostilló que el DACo actuó *ultra vires,* toda vez que el manejo de animales realengos había sido delegado a los

---

[13] Apéndice de la parte recurrente, págs. 17-33, con anejos a las págs. 34-209.
[14] Refiérase a la *Orden Ejecutiva 2021-033*; Apéndice de la parte recurrente, págs. 110-118.

municipios. A su vez, impugnó las determinaciones 2 y 4, al negar la existencia de un problema de proliferación de animales que afecten las áreas comunes, así como al afirmar que éstos sí estaban esterilizados.[15] Con relación a los honorarios de abogado, sostuvo que no existían precedentes acerca de la controversia entre las partes, por lo que no se justificaba la sanción por temeridad.

El señor Gutarra Negrón se opuso a la reconsideración del dictamen administrativo.[16] En síntesis, ripostó que la determinación administrativa ordenara la erradicación de los gatos, como alegó la Junta, sino el problema relacionado con los felinos, el cual aseguró la Junta reconoció.[17] Incluso, indicó que las partes habían auscultado alternativas para solucionar el problema, tal como colocar los alimentos para los gatos realengos fuera de las áreas comunes del Condominio. Expresó en su escrito que, de esta manera, la población de gatos se pudiese mover a las áreas verdes aledañas y ello aplacaría otras situaciones resultantes, como la presencia de gatos en las áreas comunales y sapos o ratones que ingieren la comida de los gatos. Del mismo modo, dijo no mostrar reparos en que la Junta gestione esfuerzos colaborativos con el gobierno municipal para cumplir con el mandato del DACo.

En respuesta al pedimento de la Junta y a su oposición, el DACo modificó su previo dictamen por virtud de la *Resolución en reconsideración* aquí impugnada, la cual reza como sigue:

> Se le ordena a Junta de Directores del Condominio Valles de Torrimar, que cumpla y haga cumplir las disposiciones tanto de la Ley, como el Reglamento del Condominio Valles de Torrimar por parte de los titulares o inquilinos, y no permitir que las áreas comunes sean utilizadas para alimentar animales y así evitar que éstos permanezcan el [*sic*] dichas áreas. Esto incluirá el tomar las acciones legales pertinentes contra los titulares infractores, de ser necesario.

---

[15] Apéndice de la parte recurrente, págs. 146-203.

[16] Apéndice de la parte recurrida, págs. 100-114.

[17] Apéndice de la parte recurrida, págs. 6-7.

Dentro del término de treinta (30) días, se ordena a la parte Querellada, Junta de Directores del Condominio Valles de Torrimar, el pago de $500.00 a la parte Querellante, Edgard N. Gutarra, por concepto de honorarios por temeridad[.]

Aún inconforme, la Junta acudió ante nos oportunamente mediante el presente recurso de *Revisión Judicial*. En su escrito, señala los siguientes errores:

**PRIMER ERROR:** ERRÓ DACO AL ENCONTRAR QUE LA PARTE PETICIONARIA FUE TEMERARIA Y COMO CONSECUENCIA DE ESTO TENER QUE PAGAR QUIENIENTOS [*sic*] ($500) DÓLARES EN HONORARIOS DE ABOGADOS.

**SEGUNDO ERROR:** ERRÓ DACO AL INTERVENIR EN UNA CONTROVERSIA ENTRE TITULARES CUANDO EL REGLAMENTO 9386 ESTABLECE QUE EL TRIBUNAL DE PRIMERA INSTANCIA (TPI) ES EL ENTE PARA DILUCIDAR LAS CONTROVERSIA ENTRE TITULARES.

**TERCER ERROR:** ERRÓ DACO AL ORDENAR A LA PARTE PETICIONARIA MULTAR A LOS TITULARES QUE LE DAN COMIDA A LOS GATOS DE LA COMUNIDAD QUE HAN SIDO VACUNADOS Y ESTERLIZADOS, CUANDO EL REGLAMENTO DE LA PETICIONARIA NO PROHIBE TAL CONDUCTA Y NO PROVEE PARA QUE LA JUNTA PUEDA SANCIONAR DICHA CONDUCTA.

**CUARTO ERROR:** ERRÓ DACO AL NO ORDENAR UNA ASAMBLEA ORDINARIA PARA QUE LA TOTALIDAD DEL CONSEJO DE TITULARES LA AUTORIDAD SUPREMA DEL REGIMEN DE PROPIEDAD HORIZONTAL DELIBERE SOBRE C[Ó]MO ATENDER EL ASUNTO DE LA ALIMENTACIÓN DE LOS GATOS DE LA COMUNIDAD.

El señor Gutarra Negrón presentó *Alegato en oposición al recurso*. Con la comparecencia de ambas partes, resolvemos.

## II.

### La revisión judicial

Revisamos la *Resolución en reconsideración* del DACo al palio de la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.* La Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, dispone

que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

Ahora, es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos ejecutivos y municipales para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una **presunción de legalidad y corrección** que los tribunales debemos respetar **mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas**". (Énfasis nuestro). *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente administrativo haya obrado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En torno a esto, en *Torres Rivera v. Policía de PR, supra*, el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis nuestro). *Torres Rivera v. Policía de PR, supra*, pág. 628.

Así, pues, es norma asentada que **el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad**. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012). Por lo tanto, intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Rolón Martínez v. Supte. Policía, supr*a.

### Ley de Condominios de 1958, según enmendada

Vigente a la presentación de la querella del título, el régimen de propiedad horizontal estaba regulado por la hoy derogada Ley Núm. 104 de 25 de junio de 1958, *Ley de Condominios*, 31 LPRA sec. 1291 *et seq.* (Ley de Condominios).[18] El entonces ordenamiento jurídico, al igual que el vigente, le confirió jurisdicción al DACo para adjudicar las querellas presentadas por los titulares de apartamentos destinados a vivienda. Art. 42 de la

---

[18] Actualmente, rige la Ley Núm. 129 de 16 de agosto de 2020, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios de 2020).

Ley de Condominios, 31 LPRA sec. 1293f (derogado);[19] además, *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 563 (2014). Por tal razón, el DACo creó una División Especial de Adjudicación de Querellas de Condominios en los que exista por lo menos un apartamento dedicado a vivienda. Art. 48 de la Ley de Condominios, 31 LPRA sec. 1294 (derogado).[20] Claro está, en armonía con el estatuto, el Reglamento Núm. 6728 de 26 de noviembre de 2003, hoy derogado y vigente a la querella del epígrafe, *Reglamento sobre condominios*, establecía en su Regla 26 que las controversias entre titulares serían dirimidas ante el Tribunal de Primera Instancia.[21]

En lo pertinente a las cuestiones planteadas, es un principio cardinal del régimen de propiedad horizontal que el titular de un apartamento sometido a aquél tiene el **derecho al pleno disfrute de su unidad de vivienda y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades**. Art. 1A, Ley de Condominios, 31 LPRA sec. 1291 (derogado).[22] Una disposición similar está recogida en el Artículo 31 del Reglamento del Condominio Valles de Torrimar.[23] Según se desprende de la *Resolución* del DACo,[24] la reglamentación estatuye el uso de los elementos comunes, de conformidad con su destino, naturaleza y uso, de forma prudente y moderada. Igualmente, invita a la conservación de dichos elementos, de manera que no se restrinja el legítimo derecho de los demás titulares. Conforme se expresa en la *Resolución* del DACo, la reglamentación añade, como norma de

---

[19] Véase, Artículo 65 de la Ley de Condominios de 2020, 31 LPRA sec. 1923j.

[20] Véase, Artículo 66 de la Ley de Condominios de 2020, 31 LPRA sec. 1923k.

[21] Véase, Regla 23 del Reglamento Núm. 9386 de 6 de junio de 2022, *Reglamento de condominios*.

[22] Véase, Artículo 2 de la Ley de Condominios de 2020, 31 LPRA sec. 1921a.

[23] Las referencias al Reglamento del Condominio Valles de Torrimar se desprenden de la *Resolución* del DACo de 21 de septiembre de 2023, toda vez que ninguna de las partes anejó la reglamentación comunal al expediente que revisamos.

[24] Apéndice del recurrente, pág. 10.

convivencia en el Artículo 39, la evitación de actos que perturben la tranquilidad de los demás titulares, así como el buen aspecto del Condominio.

De otra parte, el Artículo 38D (a) de la Ley de Condominios, 31 LPRA sec. 1293b-4 (a) (derogado),[25] disponía que descansaba en la junta de directores, como órgano ejecutivo de la comunidad de titulares, el **atender todo lo relacionado con la vigilancia y funcionamiento del régimen**, en particular, en torno a los elementos comunes. A tales efectos, el cuerpo rector haría las oportunas advertencias y apercibimientos a los titulares. Por igual, el ordenamiento legal compelía a la junta de directores a **cumplir y hacer cumplir las disposiciones del reglamento** del condominio de que se trate. 31 LPRA sec. 1293b-4 (i) (derogado).[26]

El Reglamento del Condominio Valles de Torrimar reproduce el aludido mandato. Surge de la *Resolución* del DACo que el Artículo 13 de la mencionada reglamentación establece lo siguiente acerca de los deberes y facultades de la Junta de Directores:

> a) Atender todo lo relacionado con el buen gobierno, administración, mantenimiento, seguridad, vigilancia y funcionamiento del Régimen, en especial, lo relativo a las cosas y elementos de uso común, haciendo a estos efectos las oportunas advertencias y apercibiendo a los titulares.
> .     .     .     .     .     .     .     .
> p) Llamar la atención por escrito, en forma adecuada, a cualquier propietario o residente que infrinja las disposiciones relativas al uso de los elementos comunes o a las normas de convivencia, con copia de dicha comunicación a los demás titulares y residentes.
> q) Adoptar reglas y normas de convivencia, adicionales a las que ya constan en este Reglamento, para el mejor uso y conservación de la propiedad comunal, sujeto a revocación o ratificación por parte del Consejo de Titulares.

Por su parte, la *Resolución* también menciona el Artículo 32 del Reglamento del Condominio Valles de Torrimar, cuyo inciso (f)

---

[25] Véase, Artículo 53 (a) de la Ley de Condominios de 2020, 31 LPRA sec. 1922y (a).
[26] Véase, Artículo 53 (i) de la Ley de Condominios de 2020, 31 LPRA sec. 1922y (i).

proscribe que los perros o **cualesquiera otros animales domésticos** permanezcan en las áreas de uso común. Se alude también que **los acápites (p) y (q) establecen el procedimiento de imposición de multas a los infractores**. A su vez, el Reglamento del Condominio Valles de Torrimar compele a la Junta a llevar un libro de mascotas, en el cual se registre, entre otros, el nombre y apartamento del titular guardián, la raza y características de la mascota, así como los datos de vacunación.[27]

En cuanto a la distinción de los animales a la que se ha hecho referencia al reseñar los hechos del caso, como cuestión de umbral, debemos partir de que el Código Civil de 2020,[28] en su Artículo 232, dispone que los animales domésticos y domesticados son seres sensibles, no sujetos a embargo. 31 LPRA sec. 5951. Indica el ordenamiento que los **animales domésticos** no son animales silvestres,[29] sino aquéllos que han sido criados bajo la guarda de una persona, con quien conviven y a quien **necesitan para su subsistencia**. Por su parte, los **animales domesticados** son aquellos que han sido entrenados para modificar su comportamiento para que realicen funciones de vigilancia, protección, búsqueda y rescate de personas, terapia, asistencia, entrenamiento y otras acciones análogas. Se excluyen de estas

---

[27] Reglamento del Condominio Valles de Torrimar, Inciso (k) del Capítulo V. Refiérase al Apéndice del recurrido, pág. 106.

[28] Ley Núm. 55 de 1 de junio de 2020.

[29] La Ley Núm. 241 de 15 de agosto de 1999, *Nueva Ley de Vida Silvestre de Puerto Rico*, 12 LPRA sec. 107 *et seq.*, en su Artículo 2 (p), define *fauna silvestre* como "**[c]ualquier especie animal** residente cuya propagación o supervivencia natural **no dependa del celo, cuidado o cultivo del hombre,** y se encuentre en estado silvestre; ya sea nativa o adaptada en Puerto Rico o cualquier especie migratoria que visite Puerto Rico en cualquier época del año, así como también las especies exóticas según se definen en esta Ley. Disponiéndose que estarán comprendidas en esta definición las aves, los reptiles, los **mamíferos** acuáticos o **terrestres**, los anfibios y todos los invertebrados e incluye cualquier parte, producto, nido, huevo, cría o su cuerpo muerto o parte de éste; incluye las especies vulnerables o en peligro de extinción". (Énfasis nuestro). Con relación a su posesión, el Código Civil de 2020 dispone en su Artículo 735 que "[l]os **animales silvestres son especies no domésticas** sujetas a procesos evolutivos y que **se desarrollan ya sea en** su hábitat, o **poblaciones e individuos de estas que se encuentran bajo el control del ser humano**. Estos animales solo se poseen mientras se hallan en poder de una persona". (Énfasis nuestro). 31 LPRA sec. 7892.

categorías a los animales destinados a la industria, a actividades deportivas o de recreo. *Id.*

De otro lado, la Ley Núm. 154 de 4 de agosto de 2008, *Ley para el bienestar y la protección de los animales*, 5 LPRA sec. 1660 *et seq.*, se promulgó, entre otros fines, para facilitar la coordinación multisectorial entre organismos gubernamentales y entes privados en la protección de los animales. El Artículo 2 del estatuto define a los **animales realengos** como aquéllos que no tienen un guardián conocido. 5 LPRA sec. 1660 (c). Un guardián se refiere a la **persona natural o jurídica con control, custodia, posesión o título sobre un animal**. 5 LPRA sec. 1660 (c). Se posee un animal cuando se tiene su custodia física o **se ejerce el dominio o control sobre éste**. 5 LPRA sec. 1660 (s).

Es meritorio mencionar que, tanto el Código Civil de 1930, Artículo 1805 del Código Civil de 1930, 31 LPRA sec. 5144 (derogado), como el Código Civil de 2020, Artículo 1541 del Código Civil de 2020, 31 LPRA sec. 10806, consideran responsable al poseedor de un animal o al que se sirve de él. Ello así, porque la persona que posee al animal, o **la que se sirve de él**, es la única capaz de tomar las precauciones indispensables para evitar cualquier perjuicio. *Serrano v. López*, 79 DPR 979, 983 (1957). Servirse de un animal no se limita a la utilidad, sino que puede ser por mero recreo. Véase, *Gigante v. Álvarez*, 48 DPR 498, 507 (1935). Por tanto, si el dueño que está en posesión y dominio de una propiedad permite que se cuide un animal, "puede considerársele como encargado de dicho animal". *Id.*, pág. 508, que cita a *Redlinger v. Crespo*, 18 DPR 108 (1912).

### *Honorarios de abogado*

La Regla 27.3 del *Reglamento de Procedimientos Adjudicativos del Departamento de Asuntos del Consumidor* de 14

de junio de 2011 (Reglamento Núm. 8034) autoriza al DACo a imponer el pago de honorarios de abogado, por concepto de temeridad, "a la parte perdidosa". En cuanto al procedimiento que regirá, la norma remite a la Regla 44 de Procedimiento Civil. Como se conoce, el ordenamiento procesal civil provee para el pago de honorarios de abogado a favor de la parte que prevalece. En general, la imposición de honorarios de abogado procede cuando una parte ha actuado con temeridad o frivolidad. *Torres Vélez v. Soto Hernández,* 189 DPR 972, 993 (2013); Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V. A pesar de que la norma procesal no describe en qué consiste la conducta temeraria, es norma asentada que se incurre en temeridad cuando se promueve un pleito frívolo, o **se provoca un litigio que se pudo evitar**, o se prolonga indebidamente, **obligando a la otra parte a incurrir en gastos innecesarios**. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010); *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 188 (2008); *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005); *Domínguez v. GA Life,* 157 DPR 690, 706 (2002). A esos efectos, la sanción pecuniaria que se impone por conducta temeraria tiene el propósito de "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que **compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte**". (Énfasis nuestro). *Marrero Rosado v. Marrero Rosado, supra,* pág. 505. Por consiguiente, el fin de la imposición de honorarios de abogado es penalizar a la parte que por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011). La adjudicación de si una parte obró o no temerariamente descansa

en la sana discreción del juzgador. *P.R. Oil v. Dayco, supra,* pág. 511. Claro, por lo general, la imposición de honorarios de abogado, por razón de temeridad, no procede en un caso cuya controversia de hechos resulte novel. Sin embargo, el hecho solo de que la cuestión en litigio sea novedosa no constituye carta blanca para actuar en forma temeraria. *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 738 (1990). Es decir, el hecho de que se trate de una desavenencia honesta no constituye excusa para una conducta obstinada, contumaz, temeraria o frívola. En cuanto a nuestro rol apelativo, la determinación sobre temeridad en sí no será revisada, a menos que se demuestre abuso de discreción. *Jarra Corp. v. Axxis Corp.* 155 DPR 764, 779 (2001). Del mismo modo, la suma concedida no será alterada, salvo que resulte insuficiente o excesiva. *Corpak, Art Printing v. Ramallo Brothers, supra,* pág. 740.

## III.

En el primer señalamiento de error, la Junta plantea que el DACo se equivocó al imponerle el pago de honorarios por temeridad. Sostiene que la compleja controversia justificó el litigio. No nos persuade.

Somos de la opinión que la determinación de temeridad del DACo se basó en la evidencia, documental y fotográfica, que obra en el expediente administrativo. En ésta, se pueden constatar los múltiples acercamientos a la Junta —de parte del señor Gutarra Negrón y, al menos, de otra titular—[30] en busca de soluciones al alegado menoscabo del disfrute de la propiedad privada y comunal, por causa directa e indirecta de los gatos comunitarios.[31] En específico, el recurrido denunció el uso indebido de las áreas del complejo, como el dejar platos de comida de gato en zonas

---

[30] En referencia a la señora Suzette Meléndez Colón, residente en el edificio B. Véase, Apéndice de la parte recurrida, págs. 69-77.
[31] Apéndice de la parte recurrida, págs. 53-68.

comunes, que atraían a sapos. A esos fines, entre otras cosas, solicitó la emisión de comunicados de cortesía o multas administrativas a las personas identificadas que incurrieron en dicha práctica. Si bien la Junta advirtió a los titulares de la prohibición de esa y otras prácticas, evidentemente, resultó tardía e insuficiente.[32] Ante ello, el recurrido se vio obligado a acudir al foro del DACo para someterse a un prolijo procedimiento administrativo.

En el presente caso, el DACo expresó en la *Resolución* que la Junta actuó de manera *contumaz y temeraria* por su laxitud al implementar la ley y la reglamentación que gobiernan el régimen de propiedad horizontal. De conformidad con el derecho aplicable, una parte actúa de manera temeraria cuando no evita un litigio que se pudo eludir. Si bien es cierto que a la controversia acerca de un programa TNR en un condominio se le puede atribuir novedad, el Alto Foro ha sido claro al expresar que ello no constituye una carta blanca para actuar de forma contumaz o temeraria. Determinamos que el error no se cometió, por lo que no intervendremos con la decisión del DACo ni la cuantía impuesta de $500, la cual consideramos que no es excesiva.

En cuanto al segundo error, la Junta afirma que el DACo no tiene jurisdicción, al entender en una controversia entre titulares, cuya alegada jurisdicción corresponde al Tribunal de Primera Instancia. En el tercer señalamiento, la parte recurrente arguye que el DACo también incidió al ordenar la imposición de multas a los titulares que dan comida a los gatos de la comunidad, cuando el Reglamento del Condominio Valles de Torrimar no prohíbe tal conducta ni provee para ese tipo de sanciones. No le asiste la razón.

---

[32] Apéndice de la parte recurrida, págs. 6-7.

Por un lado, la Ley de Condominios resguarda el derecho de todos los titulares al pleno disfrute de su propiedad privada y al de las áreas que pertenecen a todos los condóminos. Asimismo, la obligación de cumplir y hacer cumplir el ordenamiento jurídico que gobierna el régimen de propiedad horizontal recae en la junta de directores. Precisamente, la omisión de la Junta de ejercer con diligencia dicha facultad en el asunto aquí discutido es la raíz del litigio administrativo. Siendo la jurisdicción la autoridad que tiene un ente adjudicador para considerar y decidir en los méritos una controversia,[33] el DACo tenía autoridad para intervenir en la causa. Así emana del anterior Art. 42 de la Ley de Condominios, *supra,* el Artículo 65 de la Ley de Condominios de 2020, así como de la Regla 26 del Reglamento Núm. 6728 (derogado),[34] al conferir jurisdicción cuando el titular afectado impugna "cualquier (...) omisión (...) de la Junta de Directores (...) siempre y cuando (...) [la] omisión (...) en cuestión sea gravemente perjudicial para el titular (...) o cuando dich[a] (...) omisión (...) sea contraria a la Ley [y] (...) al Reglamento del Condominio".

En la causa presente, a pesar de que ninguno de los litigantes sometió el *Reglamento de Administración y Co-Propiedad del Condominio Valles de Torrimar,* de la *Resolución* surge palmariamente que la reglamentación contempla disposiciones específicas para el control de los animales domésticos en las áreas comunes. Aun cuando las normas del Condominio no expresen textualmente una regulación específica dirigida a los gatos comunitarios, lo cierto es que estos animales no pueden considerarse como meros animales realengos, sobre los cuales la Junta no pueda actuar. De hecho, aun cuando se cataloguen de esa manera, la Junta igualmente está compelida a tomar las

---

[33] Véase, *Metro Senior v. AFV,* 209 DPR 203, 208-209 (2022); *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101 (2020).
[34] Véase, Regla 23 del Reglamento Núm. 9386.

medidas disponibles en ley y conforme a la política publica gubernamental para evitar los problemas que el recurrido ha apuntado.

En este caso, el comunicado del Movimiento Concordia, fechado en octubre de 2023, expresa que el grupo cuenta con unos 18 voluntarios. Éstos se encargan de la alimentación, vigilancia y protección de la colonia de gatos, la cual a esa fecha estaba conformada por una treintena de felinos. El escrito alude al programa TNR y a la adopción de más de 50 gatos. Del documento se desprende que el Movimiento Concordia tiene "un entendimiento con la Junta de Directores bajo la Presidencia del señor Pedro J. López Norat, en apoyo a este Proyecto comunitario".[35] Así, pues, se puede colegir que los titulares voluntarios del Movimiento Concordia, por cerca de una década, han fungido como guardas de los felinos. Éstos los han protegido, esterilizado, alimentado y adoptado. Incluso, se han servido de los gatos comunitarios, tanto por la satisfacción que sienten al cuidarlos, como por la utilidad en el control de ratones, según afirman en su escrito. Decididamente, los condóminos voluntarios han permitido y facilitado el cuidado de los gatos comunitarios, por lo que puede considerárseles como sus encargados. No albergamos duda que los gatos comunitarios necesitan de los titulares del Movimiento Concordia para su subsistencia, una característica distintiva de los animales domésticos. Por ende, la Junta no puede eludir su implicación y obligación para con este asunto. Es nuestro criterio que la parte recurrente puede y debe impartir directrices especificas en cumplimiento con la *Orden* del DACo en su *Resolución en reconsideración* de **no permitir que las áreas comunes del Condominio Valles de Torrimar sean utilizadas para alimentar a animales, así como multar a los infractores**.

---

[35] Refiérase, Apéndice de la parte recurrente, págs. 105-106.

Como mencionamos, las partes han hecho acercamientos en esta dirección.

El mandato para que la Junta cumpla y haga cumplir el ordenamiento está dentro de las prerrogativas del DACo y el remedio concedido fue razonable. Nótese que, contrario a lo alegado por el recurrente, DACo no prohibió que se alimente a los 33 gatos que actualmente conforman la colonia y mucho menos sugirió dejarlos "morir de hambre y sed" ni proscribió ninguna iniciativa en su bienestar. Aun cuando empatizamos con la iniciativa del Movimiento Concordia, reconocemos que es impermisible que los titulares voluntarios se arroguen la exclusividad de áreas que pertenecen a todos los condóminos y las utilicen para alimentar a los gatos comunitarios, en contravención a la reglamentación del Condominio Valles de Torrimar. Consecuentemente, es forzoso concluir que el DACo no incurrió en los dos errores señalados.

En el cuarto señalamiento de error, la parte recurrente arguye que el DACo debió ordenar una asamblea ordinaria para que fuera el Consejo de Titulares quien delibere sobre cómo atender el asunto de la alimentación de los gatos de la comunidad. No obstante, al revisar los autos del caso, nos percatamos que la Junta peticiona por primera vez la celebración de un cónclave. El pedimento no surge en ninguna de las súplicas de las comparecencias del recurrente ante el DACo, por lo que el señalamiento es inmeritorio.

En el ejercicio de sus facultades, nada impide que la Junta convoque una asamblea extraordinaria. Dentro de sus potestades, el Consejo de Titulares puede disponer lo que estime conveniente en su comunidad, incluyendo las enmiendas al Reglamento de Valles de Torrimar, siempre y cuando, éstas sean conformes a la Ley de Condominios de 2020 y no menoscaben los derechos

propietarios y la convivencia pacífica de todos los residentes. Ahora bien, ello no implica de ninguna manera evadir el mandato del DACo, el cual debe cumplirse con inmediatez y diligencia.

Luego de un análisis sosegado, opinamos que las determinaciones de hechos consignadas por el DACo fueron fundamentadas en la evidencia sustancial que obra en el expediente administrativo. En su *Resolución en reconsideración*, el DACo aplicó correctamente el derecho, tal y como las partes acordaron al someter sus respectivos memorandos. Recalcamos que este foro revisor no puede sustituir el criterio del DACo por el suyo, a menos que el ente administrativo haya actuado de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron. Toda vez que la parte recurrente no demostró tal proceder, acordamos confirmar la decisión administrativa impugnada.

## IV.

Por los fundamentos anteriormente expuestos, se confirma la *Resolución en reconsideración* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones